[Crim. No. 6371.   First Dist., Div. Four.   Feb. 1, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LARS GILBERT KAMPMANN, Defendant and Appellant.

---

*Retired Presiding Justice of the Court of Appeal, sitting under assignment by the Chairman of the Judicial Council.

John Kaplan for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci, John T. Murphy and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

CHRISTIAN, J.—Defendant appeals from an order admitting him to probation upon his conviction of violation of Health and Safety Code, section 11530 (possession of marijuana). The judgment depends substantially upon evidence produced by an unlawful search; it must therefore be reversed.

Two sheriff's deputies in a patrol car were dispatched one evening to an address on Alpine Road in Menlo Park. When they arrived they were met by the person who had called the sheriff's office and were informed that there had been a loud commotion a short time before at the house next door. A girl had screamed, "I'm being choked" and the informant related that he had seen two middle-aged persons at the house. Suddenly the screaming had stopped and a car which had previously been observed nearby had disappeared. Believing from this account that a kidnaping had occurred, the deputies went next door to investigate.

Finding the screen door ajar, the officers knocked and then yelled into the house. There was no answer. Through the door they could see phonograph records on the floor, bottles

knocked over and papers scattered about. The officers concluded that some violent crime had been committed. Entering the house they searched all the rooms and closets, expecting that they might find a body. They found nothing. Then, while one of the officers used the telephone located on the kitchen table to call the desk sergeant, his partner noticed an open coffee can on the table near the telephone. It contained hypodermic needles, syringes and marijuana. This discovery was reported immediately to headquarters and more officers were dispatched to the house to make a further investigation.

Meanwhile it was learned that appellant occupied the premises under a lease. He was then busy in a garage on Skyline Boulevard, several miles away, practicing with an electric band. Two deputies went immediately to get appellant. Appellant refused to return with the officers, but the "victim" had already communicated with appellant, and he explained that the supposed kidnaping was a misunderstanding. Apparently the girl who screamed in the night was one of three girls who were living at appellant's house; the "middle-aged persons" were her parents; and the clamorous struggle heard by the neighbors represented the girl's unwillingness to be rescued by them. The officers arrested appellant for possession of marijuana and brought him back to the house at Menlo Park.

The parents of the supposed kidnap victim had already arrived at the house when the two officers brought appellant there. There was by then direct confirmation that the "kidnaping" was a family affair. The same two officers who brought appellant home soon took him away to jail. Thereafter the other officers made a second, much more thorough search of the house. They had no warrant. This second search produced, also on the kitchen table, an opaque marmalade jar containing marijuana, an empty bottle labeled "Methedrine," and an ashtray containing a marijuana "roach." Residue found in a pipe turned out to be marijuana. A coffee can almost filled with marijuana was found underneath a desk. Near that can was found a passport bearing appellant's name and photo. Another roach was found in an ashtray in one of the bedrooms. The officers found a vial of Methedrine hidden in an overnight bag in one of the bedrooms. Brown cigarette papers were found in several areas of the house.

One of the girls who lived in the house had a narcotics record. There was also evidence that appellant had left the house about five hours before the first discoveries were made.

Timely objection was made to the introduction of any of the contraband, upon the ground that it was the product of an unreasonable search and seizure. Nevertheless the evidence was admitted and appellant was thereupon found guilty.

On appeal appellant concedes that the two officers acted properly in entering his house to deal with what they thought was an emergency arising out of a kidnaping or violent crime. He also concedes that the first can of marijuana was discovered without any search having been made. But it is contended that the seizure of that marijuana was unlawful and that the further contraband seized after the arrival of the narcotics officers was the product of an unreasonable search.

Appellant's first contention is that although the entry originally made by the officers was lawful, as soon as the first can of marijuana was discovered, they should have posted a guard upon it and procured a search warrant before making a seizure. Cf. *Trupiano* v. *United States* (1948) 334 U.S. 699 [92 L.Ed. 1663, 68 S.Ct. 1222], overruled in *United States* v. *Rabinowitz* (1950) 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430].) It is true that such a procedure was followed in *People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721], where police officers entered premises without a warrant when, approaching to investigate a burglary, they heard sounds like moans of distress inside the apartment. While searching for someone in distress they noticed a stolen radio in the kitchen. Rather than seizing the radio immediately they procured a search warrant. The conviction which was founded upon the seized radio was affirmed. However, the *Roberts* case is not a holding that the officers were *required* to obtain a warrant in that situation. Appellant relies upon *United States* v. *Scott* (D.C. 1957) 149 F. Supp. 837, in which officers lawfully entered a robbery suspect's apartment, saw in plain sight items taken in the robbery, and seized those items without a search warrant. The court held that once the officers found the stolen property there was no urgency requiring an immediate seizure. Thus, since they failed to go and get a search warrant, the seizure was held to be illegal and the evidence produced thereby was inadmissible. A contrary result has been reached by the United States Supreme Court in *Warden* v. *Hayden* (1967) 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642], in which police officers pursued a robber into a house and there made an extensive search which produced several items of evidence. The court held that the entry in hot pursuit was lawful, and thereupon sustained the admission of evidence which was dis-

covered in a search reasonably connected with the hot pursuit even though in the circumstances there presented the search was held not to have been incident to the arrest.

Similar results have been reached in several California cases. In both *People* v. *Smith* (1966) 63 Cal.2d 779 [48 Cal. Rptr. 382, 409 P.2d 222], and *People* v. *Gilbert* (1965) 63 Cal. 2d 690, 706 [47 Cal.Rptr. 909, 408 P.2d 365] (vacated on other grounds, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]), an entry without a warrant was held to have been justified by hot pursuit or other pressing emergency, and evidence seized in the ensuing search was held to be admissible. In neither case was the search incident to an arrest. In *People* v. *Jackson* (1961) 198 Cal.App.2d 698 [18 Cal.Rptr. 214], officers went to defendant's house with a warrant for his arrest. While one officer was arresting defendant in the back yard, the other entered the house and observed in plain sight a bag of marijuana. The contraband was seized without a warrant and its admission in evidence was upheld, though under the circumstances the seizure was held not to have been incident to the arrest. The court declared that ''the officer, once in the room, did not have to blind himself to what was in plain sight simply because it was disconnected with the purpose for which he entered.'' Other cases hold that when one person who has authority to do so consents to the entry of premises by the police evidence may be lawfully seized without a search warrant even though it is ultimately to be admitted in evidence against another party. (*People* v. *Ransome* (1960) 180 Cal.App.2d 140 [4 Cal. Rptr. 347] ; also see 2 U.S.F.L.Rev. 141, *Third Party Consent to Police Searches.*) Likewise if a defendant himself consents to a search for one purpose and evidence is found tending to establish his guilt of an unrelated offense it may be seized without a warrant. (*People* v. *Collier* (1959) 169 Cal.App.2d 19 [336 P.2d 582].

The underlying principle common to all of these cases is that the purpose of the Fourth Amendment, to protect the security of the people's houses against unreasonable search, is satisfied if the entry was lawful and the ensuing actions of the police are not oppressive. ■ Where a lawful entry has occurred the seizure of contraband observed in plain sight is not unreasonable; on the contrary, it is the lawful duty of the police officer. To require in the present case that one officer go to obtain a warrant while the other remains camped by the marijuana would further no recognizable interest; it would magnify technicality at the expense of reason.

■ Appellant's final contention is that even granting the admissibility of the can of marijuana fortuitously seen by the first two officers the other evidence developed in the course of the later search should have been excluded. The Attorney General contends that the later discoveries were admissible as the incidental by-products of a continuing investigation of the supposed kidnaping, but the record compels a contrary view. According to the uncontradicted testimony of one of the officers, the further search may have begun before Kampmann was brought to the house but it was certainly continued thereafter, when the parents of the "kidnaped" girl had already been interviewed, and appellant had been taken away to jail; there was then no longer any concern with the supposed kidnaping. Clearly this continued searching had only one purpose: the development of evidence for a narcotics prosecution. The sequence of events related in the testimony makes it appear highly likely, if not absolutely certain, that all or a major part of the additional evidence was discovered after concern with the supposed kidnaping had ended. That phase of the search was unlawful and the evidence developed thereby should have been excluded.

■ Respondent suggests that even if the additional evidence was unlawfully obtained it was merely cumulative and not prejudicial on the issue of appellant's guilt of possession of the first, lawfully discovered, can of marijuana. (Cal. Const., art. VI, § 13.) But that first can of marijuana was found in a place which was equally accessible to all of the occupants of the house and appellant was not the last person to leave the house before the officers arrived. In these circumstances if the additional evidence, including the presence of appellant's passport immediately adjacent to a further supply of marijuana, had not been before the court a much closer question of fact would have been presented at trial. (Cf. *People* v. *Antista* (1954) 129 Cal.App.2d 47 [276 P.2d 177].) In *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], the United States Supreme Court held that except in cases presenting certain federal constitutional errors which automatically require reversal, the reviewing court can affirm in the face of constitutional error if it believes that such error was harmless beyond a reasonable doubt. But the court declared in the same decision that "An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under *Fahy*, be conceived of as

harmless. . . ."[1] The evidence here in question was directly relevant and highly probative as to the issue of appellant's knowing exercise of dominion over the marijuana which was first discovered. The erroneous admission of that evidence was thus prejudicial.

The judgment is reversed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied March 1, 1968, and respondent's petition for a hearing by the Supreme Court was denied March 28, 1968.

---

[1] *Fahy* v. *Connecticut* (1963) 375 U.S. 85 [11 L.Ed.2d 171, 84 S.Ct. 229].