69 Cal.2d 782 (1968)
INA MAE JOHNSON, Plaintiff and Appellant,
v.
STATE OF CALIFORNIA, Defendant and Respondent.
L. A. No. 29565. 
Supreme Court of California. In Bank. 
Dec. 4, 1968.
 Fizzolio & Fizzolio, James M. Fizzolio, C. Thomas Fizzolio and Albert Vieri for Plaintiff and Appellant.
 Edward I. Pollock, Robert E. Cartwright, Theodore A. Horn, Robert G. Beloud and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.
 Thomas C. Lynch, Attorney General, and Robert H. O'Brien, Deputy Attorney General, for Defendant and Respondent.
 TOBRINER, J.
 Plaintiff Ina Mae Johnson appeals from the granting of summary judgment in favor of defendant State of California.
 In her first amended complaint for personal injuries plaintiff made the following allegations. On or about September 13, 1963, defendant, State of California, acting through Mr. William Baer, Placement Officer of the Youth Authority [an agency of the defendant state], requested Mr. Floyd N. Johnson and Mrs. Ina Mae Johnson to provide a foster home for one Gary Lee Chemlouski, age 16 years." The Youth Authority acted negligently in allowing "a 16 year old boy with homicidal tendencies, and a background of violence and cruelty towards both animals and humans to be placed in the *785 home" of Mr. and Mrs. Johnson without "notice of any dangerous propensities" even though "defendants ... had notice of same." As a result of this negligence on the part of the state, "plaintiff Ina Mae Johnson was assaulted by said Gary Lee Chemlouski on September 18, 1963, and suffered the injuries hereinafter described.""
 After answering this complaint the state moved for summary judgment, contending that Government Code sections 820.2 and 845.8 granted the state immunity from liability in this situation. The state argued, moreover, that, regardless of the disposition of the immunity question, it owed no duty of care to plaintiff. [fn. 1] The trial judge granted the state's motion for summary judgment.plaintiff appeals from this ruling.
 [1] At the outset, we can dispose summarily of the contention, not strenuously pressed by defendant, that the judgment should be affirmed because the state owed no duty of care to plaintiff. As the party placing the youth with Mrs. Johnson, the state's relationship to plaintiff was such that its duty extended to warning of latent, dangerous qualities suggested by the parolee's history or character. (Cf. Langley v. Pacific Gas & Elec. Co. (1953) 41 Cal.2d 655, 661 [262 P.2d *786 846]; Crane v. Smith (1943) 23 Cal.2d 288, 296 [144 P.2d 356]; Gherna v. Ford Motor Co. (1966) 246 Cal.App.2d 639, 650-651 [55 Cal.Rptr. 94]; Crane v. Sears Roebuck & Co. (1963) 218 Cal.App.2d 855, 859 [32 Cal.Rptr. 754]; Ellis v. D'Angelo (1953) 116 Cal.App.2d 310, 317 [253 P.2d 675]; Rest.2d Torts, 301(2)(b).) These cases impose a duty upon those who create a foreseeable peril, not readily discoverable by endangered persons, to warn them of such potential peril. [fn. 2] Accordingly, the state owed a duty to inform Mrs. Johnson of any matter that its agents knew or should have known that might endanger the Johnson family; at a minimum, these facts certainly would have included "homicidal tendencies, and a backgrund of violence and cruelty" as well as the youth's criminal record.
 The issue before us thus narrows to whether the trial judge's ruling can be sustained on the theory that in the instant situation the state enjoys immunity from tort liability. We shall explain why we have concluded that it wins no such privilege, and that the judgment must therefore be reversed. We shall first set out our reasons for holding that the decision as to whether to advise of latent, dangerous characteristics in the youth did not constitute "the exercise of the discretion vested in [a public employee]." (Gov. Code, 820.2.) We shall next explain that the statutory provision granting immunity for any "injury resulting from determining ... the terms and conditions of [a prisoner's] parole or release" (Gov. Code, 845.8, subd. (a)) does not control the instant situation. Finally, we shall point out that the employee's failure to warn the Johnsons does not constitute a "misrepresentation" supporting immunity (Gov. Code, 818.8). Since none of the proffered theories of immunity can stand, the granting of summary judgment to the state must be reversed for trial on the merits of plaintiff's personal injury claim.
 [2a] 1. The parole agent, in deciding whether to warn of potentially dangerous propensities of a youth being placed in *787 a foster home, did not engage in a "discretionary" function within the meaning of Government Code section 820.2.
 Section 820.2 of the Government Code provides, in relevant part: "A public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Since, with certain exceptions not applicable here, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability" (Gov. Code, 815.2, subd. (b)), [fn. 3] the employee's successful assertion of the defense of the "discretionary act" ( 820.2) would also insulate the defendant state from liability.
 [3a] a. A semantic inquiry into the meaning of "discretionary" will not suffice as a criterion for interpreting section 820.2.
 In arguing that section 820.2 governs the instant situation, the state relies, in the first instance, on a literal interpretation of "discretionary." It contends that "Mr. Baer ... had to exercise his professional judgment" as to whether, for example, "the boy's medical, psychiatric and other institutional records should be given to the foster parents, or if only a part of them should be." "Certainly each situation presents different problems, and the parole agent must exercise his discretion as to the manner in which to handle such problems." (Attorney General's brief, p. 4.) The necessity for the exercise of this discretion, the state concludes, renders section 820.2 literally applicable. *788
 We recognize that several California cases, with confusing and often conflicting results, having embarked on this very type of ambitious analysis, a definition of "discretion," then attempt to apply it to a given fact situation. For example, in Elder v. Anderson (1962) 205 Cal.App.2d 326, 331 [23 Cal.Rptr. 48], the court defined discretionary acts as "those wherein there is no hard and fast rule as to the course of conduct that one must or must not take and, if there is a clearly defined rule, such would eliminate discretion." (See also Doeg v. Cook (1899) 126 Cal. 213, 216 [58 P. 707, 77 Am.St.Rep. 171]; Ne Casek v. City of Los Angeles (1965) 233 Cal.App.2d 131, 134-135 [43 Cal.Rptr. 294]; Glickman v. Glasner (1964) 230 Cal.App.2d 120, 125 [40 Cal.Rptr. 719].) "Generally speaking, a discretionary act is one which requires the exercise of judgment or choice. Discretion has also been defined as meaning equitable decision of what is just and proper under the circumstances." (Burgdorf v. Funder (1966) 246 Cal.App.2d 443, 449 [54 Cal.Rptr. 805].) Finally, "[a] discretionary act is one which requires 'personal deliberation, decision and judgment' while an act is said to be ministerial when it amounts 'only to ... the performance of a duty in which the officer is left no choice of his own.' " (Morgan v. County of Yuba (1964) 230 Cal.App.2d 938, 942 [41 Cal.Rptr. 508], citing Prosser, Law of Torts (3d ed. 1964) p. 1015.)
 We follow equally sound precedent, however, in rejecting the state's invitation to enmesh ourselves deeply in the semantic thicket of attempting to determine, as a purely literal matter, "where the ministerial and imperative duties end and the discretionary powers begin. ... [I]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." (Ham v. County of Los Angeles (1920) 46 Cal.App. 148, 162 [189 P. 462]; see generally 2 Harper & James, The Law of Torts (1956) 29.14, p. 1658; Note, The Discretionary Function Exception of the Federal Tort Claims Act (1953) 66 Harv.L.Rev. 488, 490.)
 We cannot escape the pertinence of the above analysis to the instant situation. The parole officer's duty might be classified as "discretionary": to select for disclosure, from a myriad of possibilities, those elements of the youth's character and background which would be most helpful to the foster parents and yet would not endanger the parole effort. It *789 would be equally plausible, on the other hand, to characterize the officer's duties as embracive of "ministerial" elements prescribed by the law of torts: to warn of foreseeable, latent dangers.
 The leading case rejecting a purely mechanical analysis of "discretionary" in favor of greater reliance on the policy considerations relevant to the purposes of granting immunity to the governmental agency whose employees act in discretionary capacities is Lipman v. Brisbane Elementary Sch. Dist., supra, 55 Cal.2d 224. In that case, this court considered a complaint against a school district alleging that three trustees maliciously sought to discredit plaintiff's reputation and thus force her retirement as a teacher. Refusing to rely heavily on a literal analysis of whether defendants exercised "discretion," we instead posited immunity on the following compendium of considerations: "Although it may not be possible to set forth a definitive rule which would determine in every instance whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages." (55 Cal.2d at p. 230.) [fn. 4]
 Several recent cases, in interpreting Government Code section 820.2 since the 1963 codification, have also eschewed a literal approach to defining "discretionary actions," concentrating instead principally on policy considerations relevant to the governmental entity's claim of immunity. (See, e.g., Sava v. Fuller (1967) 249 Cal.App.2d 281, 290 [67 Cal.Rptr. 312]; Scruggs v. Haynes (1967) 252 Cal.App.2d 256, 267 [60 *790 Cal.Rptr. 355].) In particular, in Ne Casek v. City of Los Angeles, supra, 233 Cal.App.2d 131, 135, the court advanced the following analysis: "Since obviously no mechanical separation of all activities in which public officials may engage as being either discretionary or ministerial is possible, the determination of the category into which a particular activity falls should be guided by the purpose of the discretionary immunity doctrine."
 [4] This analysis does not, of course, render irrelevant for all purposes the Attorney General's factual contention that Youth Authority officers such as Mr. Baer in fact must exercise some discretion in determining what to disclose to prospective foster parents. Our rejection of a literal interpretation of "discretionary" merely implies that the existence of some such alternatives facing the employee does not perforce lead to a holding that the governmental unit thereby attains the status of non- liability under section 820.2. These alternatives may well play a major part in the resolution of the substantive question of negligence; they do not, however, dispose of the threshold question of immunity.
 [5a] b. The danger that public employees will be insufficiently zealous in their official duties does not serve as a basis for immunity in California.
 Historically, the justification for attaching immunity to "discretionary" actions of public officials was to protect such employees from the spectre of extensive personal tort liability. Judge Learned Hand advanced the classic articulation of this policy: "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." (Gregoire v. Biddle (2d Cir. 1949) 177 F.2d 579, 581; see generally Jaffe, Judicial Control of Administrative Action (1965) p. 245.)
 We shall explain that California's statutory provisions for indemnification of public officials largely remove the dangers *791 that troubled Judge Hand and that any concern for the preservation of ardor in the performance of public duties need not constitute a substantial consideration in our definition of "discretionary" action. In so concluding, we follow the implications of two recent and definitive Court of Appeal decisions. (Sava v. Fuller, supra, 249 Cal.App.2d 281, 290; Ne Casek v. City of Los Angeles, supra, 233 Cal.App.2d 131, 137.)
 If an injured party collects a judgment from a public entity, that entity can exercise only extremely limited rights against the employee whose conduct gave rise to the decision. Government Code section 825.4 provides: "Except as provided in Section 825.6, if a public entity pays any claim or judgment against itself or against an employee or former employee of the public entity, or any portion thereof, for an injury arising out of an act or omission of the employee or former employee of the public entity, he is not liable to indemnify the public entity." In substance, section 825.6 provides that the employee must indemnify the public entity only if (1) the act upon which the judgment was based occurred outside the employee's scope of employment, or (2) the employee acted with actual fraud, corruption, or malice. In sum, the public entity can never receive indemnification for the employee's good faith conduct of his regular duties.
 Nor need the employee face any requirement that he assume the financial and mental burden of defending his official conduct in a personal suit filed against him. Section 825 of the Government Code provides in part: "If an employee or former employee of a public entity requests the public entity to defend him against any claim or action against him for an injury arising out of an act or omission occurring within the scope of his employment as an employee of the public entity and such request is made in writing not less than 10 days before the day of trial, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed." The public entity can reserve a right not to pay this judgment, but only if it can prove that the injury did not arise from an act or omission occurring within the employee's scope of employment. (Gov. Code, 825.)
 The California system of indemnification substantially eliminates the concerns of Judge Hand. The public employee need not suffer concern over the possibility that he will be compelled to finance and oversee a tort suit filed against him *792 personally; the statute provides for defense by the public entity upon notice, and the employee's best interests clearly favor the giving of such notice. Moreover, the public employee faces only a slim danger of ultimate personal liability; such liability attaches only in the rare instances of injuries arising from acts either outside the scope of employment or performed with actual fraud, corruption, or malice. [fn. 5] [6] Indeed, a principal purpose of the indemnification scheme laid out in Government Code sections 825 to 825.6, limiting the personal threat of suit or liability, centered on assuring the zealous execution of official duties by public employees. [5b] To the extent that the ardor of public employees might be affected by the threat of personal liability, [fn. 6] these fears will be allayed by the indemnification provisions.
 Nor do we deem an employee's concern over the potential liability of his employer, the governmental unit, a justification for an expansive definition of "discretionary," and hence immune, acts. As a threshold matter, we consider it unlikely that the possibility of government liability will be a serious deterrent to the fearless exercise of judgment by the employee. (Cf. Note, The Discretionary Function Exception of the Federal Tort Claims Act, supra, 66 Harv.L.Rev. 488, 495-496.) In any event, however, to the extent that such a deterrent effect takes hold, [fn. 7] it may be wholesome. An employee in a private enterprise naturally gives some consideration *793 to the potential liability of his employer, and this attention unquestionably promotes careful work; the potential liability of a governmental entity, to the extent that it affects primary conduct at all, will similarly influence public employees. (Cf. James, Tort Liability of Governmental Units and Their Officers, supra, 22 U.Chi.L.Rev. 610, 652; Peck, The Federal Tort Claims Act: A Proposed Construction of the Discretionary Function Exception, supra, 31 Wash.L.Rev. 207, 224.)
 [7] c. The decision of a parole officer as to what warnings to give to foster parents does not constitute the type of basic policy decision that the Government Code seeks to insulate from liability in section 820.2.
 In drawing the line between the immune "discretionary" decision and the unprotected ministerial act we recognize both the difficulty and the limited function of such distinction. As we said in Lipman v. Brisbane Elementary Sch. Dist., supra, 55 Cal.2d 224, 230, "it may not be possible to set forth a definite rule which would determine in every instance whether a governmental agency is liable." A workable definition nevertheless will be one that recognizes that "[m]uch of what is done by officers and employees of the government must remain beyond the range of judicial inquiry" (3 Davis, Administrative Law Treatise (1958) 25.11, p. 484); obviously "it is not a tort for government to govern" (Dalehite v. United States (1953) 346 U.S. 15, 57 [97 L.Ed. 1427, 1452, 73 S.Ct. 956] (Jackson, J., dissenting)). Courts and commentators have therefore centered their attention on an assurance of judicial abstention in areas in which the responsibility for basic policy decisions has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government. Moreover, the potentiality of such review might even in the first instance affect the coordinate body's decision-making process. (See generally Jaffe, Judicial Control of Administrative Action, supra, 241, 259; James, Tort Liability of Governmental Units and Their Officers, supra, 22 U.Chi.L.Rev. 610, 651; Peck, The Federal Tort Claims Act: A Proposed Construction of the Discretionary *794 Function Exception, supra, 31 Wash.L.Rev. 207, 240; Note, The Discretionary Function Exception of the Federal Tort Claims Act, supra, 66 Harv.L.Rev. 488, 489-490.)
 We recognize that this interpretation of the term "discretionary" presents some difficulties. For example, problems arise in attempting to translate this concern for the court's role in the governmental structure into an applicable touchstone for decision. Our proposed distinction, sometimes described as that between the "planning" and "operational" levels of decision-making (cf. Dalehite v. United States, supra, 346 U.S. 15, 35-36 [97 L.Ed. 1427, 1440-1441, 73 S.Ct. 956]), however, offers some basic guideposts, although it certainly presents no panacea. Admittedly, our interpretation will necessitate delicate decisions; the very process of ascertaining whether an official determination rises to the level of insulation from judicial review requires sensitivity to the considerations that enter into it and an appreciation of the limitations on the court's ability to reexamine it. Despite these potential drawbacks, however, our approach possesses the dispositive virtue of concentrating on the reasons for granting immunity to the governmental entity. It requires us to find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action alleging that careless conduct contributed to the governmental decision. [fn. 8] In so doing we follow the precept of Lipman v. *795 Brisbane Elementary Sch. Dist., supra, 55 Cal.2d 224, and those cases applying it cited on page 789, ante, of this opinion.
 In any event, whatever the "line-drawing" difficulties in future cases, we shall point out that no plausible reason for governmental immunity arises in the instant situation.
 The Youth Authority unquestionably makes some decisions falling within the "discretionary function" language of section 820.2, as we have heretofore defined it. As to the determination of whether to place a youth on parole, for example, the Legislature has specifically granted to the Youth Authority the power to weigh potential risks and benefits and to establish standards: "When, in the opinion of the Youth Authority, any person committed to or confined in any such school deserves parole according to regulations established for the purpose, and it will be to his advantage to be paroled, the Authority may grant parole under such conditions as it deems best. ..." (Welf. & Inst. Code, 1176.) The decision to parole thus comprises the resolution of policy considerations, entrusted by statute to a coordinate branch of government, that compels immunity from judicial reexamination. [fn. 9]
 Once an official reaches the decision to parole to a given family, however, the determination as to whether to warn the foster parents of latent dangers facing them presents no such reasons for immunity; to the extent that a parole officer consciously considers pros and cons in deciding what information, *796 if any, should be given, he makes such a determination at the lowest, ministerial rung of official action. Judicial abstinence from ruling upon whether negligence contributed to this decision would therefore be unjustified; coupled with the administrative laxness that caused the loss in the first instance, it would only result in the failure of governmental institutions to serve the injured individual.
 This analysis, allowing immunity for basic policy decisions by the Youth Authority but rejecting it for the ministerial implementation of that basic policy, receives support from a long line of cases in California and in federal courts, interpreting similar "discretionary" language in section 2680, subdivision (a), of the Federal Tort Claims Act. In Sava v. Fuller, supra, 249 Cal.App.2d 281, 290, a suit for malpractice against a state-employed botanist and the state, the court said: "In the instant case ... Dr. Fuller had already exercised discretion by agreeing to analyze the possible ingested plant substance to determine its toxicity. ... [E]xercise-of-discretion had ended at that point and thereafter the inquiry would be limited to whether there had been an exercise of due care under a duty assumed. ... [O]nce the determination has been made that a service will be furnished and the service is undertaken, then public policy demands (except when the Legislature specifically decrees otherwise) that government be held to the same standard of care the law requires of its private citizens in the performance of duties imposed by law or assumed."
 The above line of analysis controls the following cases: United States v. Washington (9th Cir. 1965) 351 F.2d 913, 916 (decision as to where the place wire across canyon was assumed to be discretionary, but failure to warn pilot was not); United Air Lines, Inc. v. Wiener (9th Cir. 1964) 335 F.2d 379, 397-398, cert. dism. sub nom. United Air Lines, Inc. v. United States (1964) 379 U.S. 951 [13 L.Ed.2d 549, 85 S.Ct. 452] (decision to conduct air flights was discretionary, but failure to warn commercial airline was not); United States v. White (9th Cir. 1954) 211 F.2d 79, 82 (decision not to "dedud" army firing range assumed to be discretionary, but telling person about to go onto range that it was safe not discretionary); Costley v. United States (5th Cir. 1950) 181 F.2d 723, 724-725 (discretionary function to admit patient to hospital, but no immunity for treatment thereafter); Bulloch v. United States (D. Utah 1955) 133 F.Supp. 885, 889 (decision as to how and when and in what manner to conduct *797 nuclear tests was discretionary, but failure to give proper notice was not); Hernandez v. United States (D. Hawaii 1953) 112 F.Supp. 369, 371 (discretionary to erect road block, but failure to warn of the hazard created was not); Worley v. United States (D. Ore. 1952) 119 F.Supp. 719, 721 (decision to use coyote traps assumed to be discretionary, but failure to warn is not).
 These cited cases establish the principle that, although a basic policy decision (such as standards for parole) may be discretionary and hence warrant governmental immunity, subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence. Indeed, most of these cases, like the instant situation, involve failure to warn of foreseeable, latent dangers flowing from the basic, immune decision. [fn. 10]
 [2b] In sum, the instant fact situation presents no reason for sovereign immunity; not only does the officer's decision as to warnings fail to rise to the level of governmental decisions calling for judicial restraint, but also the state failed to prove that the officer consciously considered the risks to plaintiff and determined that other policies justified them. (See fn. 8, supra.) In fact, to the contrary, this is a classic case for the imposition of tort liability. Defendant failed to warn plaintiff of a foreseeable, latent danger, and this failure led to plaintiff's injury from precisely the expected source; courts encounter this type of allegation daily and are well suited to resolve its validity under traditional tort doctrine. The loss, moreover, falls peculiarly on plaintiff, who, having no administrative recourse, must achieve vindication in litigation or not at all. Since the entire populace of California benefits from the activity of the Youth Authority, it should also share *798 equally the burden of injuries negligently inflicted on individual citizens; suits against the state provide a fair and efficient means to distribute these losses.
 [3b] The 1963 Tort Claims Act did not alter the basic teaching of Muskopf v. Corning Hospital Dist., supra, 55 Cal.2d 211, 219: "when there is negligence, the rule is liability, immunity is the exception." Accordingly, courts should not casually decree governmental immunity; through a literal interpretation of "discretionary" or otherwise, section 820.2 should not be made a "catchall section broadly encompassing every judgment exercised at every level. ... [That,] to borrow the language of Justice Frankfurter ... [would be] to make the act 'self-defeating by covertly imbedding the casuistries' of some of the pre-Muskopf cases." (Sava v. Fuller, supra, 249 Cal.App.2d 281, 291.) [2c] Since the state fails to demonstrate a pressing interest in judicial refusal to review a parole officer's decision as to warnings, the instant case falls far short of the strong showing required by section 820.2 to justify "discretionary function" immunity.
 In resisting this analysis, the state points out that the Youth Authority fulfills the "important" public service of rehabilitation and invites us to speculate that sanction of tort suits for negligence will impair this rehabilitative effort by encouraging "either a stand-still in ... [the] placement operation or at least a timid approach to rehabilitation." Even if this dubious prediction rests on some basis in fact, however, it cannot serve as a reason for immunity.
 The state's contention finds no support in the cases or in the 1963 codification of immunity law. The Legislature did not isolate the Youth Authority as an agency performing a function too important to risk any judicial surveillance; instead, the Youth Authority, like other agencies, attains immunity for specific types of acts and decisions and not for others. In the absence of a legislative declaration, we cannot say that the Youth Authority performs a function so much more important than that of other state agencies as to warrant total immunity. Indeed, if "importance" were the criterion, presumably most state services could meet it; immunity would then be the rule rather than the exception, and we would truly have turned Muskopf on its head.
 [8] 2. The state does not achieve immunity in the instant case under Government Code section 845.8, which provides immunity for a determination "whether to parole or release a *799 prisoner or ... [of] the terms and conditions of his parole or release."
 The Law Revision Commission comment to this section specifies its limited goal: to allow the proper officials "unfettered" discretion to determine "[t]he extent of the freedom that must be accorded to prisoners for rehabilitative purposes." (Cal. Law Revision Com. Rep., Recommendation Relating to Sovereign Immunity No. 1, January 1963, p. 861; see also fn. 9, ante.) But, although section 845.8 requires that each member of the general public who chances to come into contact with a parolee bear the risk that the rehabilitative effort will fail, nevertheless well-intentioned foster parents, whose direct and continuous contact with the parolee drastically increases the dangers to them, need not go without a remedy. Once the proper authorities have made the basic policy decision--to place a youth with foster parents, for example--the role of section 845.8 immunity ends; subsequent negligent actions, such as the failure to give reasonable warnings to the foster parents actually selected, are subject to legal redress.
 [9a] 3. The parole officer's conduct, whether he expressed affirmative and false representations as to the youth's character or merely remained silent on this matter, does not warrant immunity under Government Code section 818.8 as a "misrepresentation."
 Government Code section 818.8 provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Although the state does not now claim immunity on the ground that the parole officer's conduct consisted of a "misrepresentation," it successfully advanced this position in a demurrer to plaintiff's first complaint which alleged that the parole officer had affirmatively misrepresented that the youth had no background of violence and no character traits suggesting violent actions in the future. In order to clarify our position in the event of further proceedings, we shall briefly explain that the trial court improperly sustained the state's earlier demurrer on the ground of section 818.8.
 At the outset, we note that, like the question of "discretionary" acts, "misrepresentation" potentially lends itself to extremely expansive and elusive interpretations. A driver of an automobile who makes a misleading turn signal, for *800 example, literally has "misrepresented" his intentions and subsequent course of conduct. Yet it would be senseless to hold the state liable if its employee failed to make any signal, arguably a "nonrepresentation," but reach the opposite result if he affirmatively "misrepresented" his intentions. Similarly, in the instant case it would be at best anomalous, and at worst an inversion of accepted priorities, to allow the state immunity only upon a finding that the parole officer actually lied to plaintiff.
 We avoid this potential quagmire, however, by centering on the Legislature's goal in exempting the state from tort liability for "misrepresentation." The Legislature, in creating this exemption, must have had in mind those areas in which private defendants typically face liability for "misrepresentation"; in other areas, immunity for "misrepresentation" would be superfluous.
 Considering a tort claim under the analogous section of the Federal Tort Claims Act, the United States Supreme Court stated, citing Dean Prosser: "many familiar forms of negligent conduct may be said to involve an element of 'misrepresentation,' in the generic sense of that word, but '[s]o far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.' " (United States v. Neustadt (1961) 366 U.S. 696, 711, fn. 26 [6 L.Ed.2d 614, 624, 81 S.Ct. 1294].) The Senate Committee on Judiciary Comment to section 818.8 of California's statute confirms this interpretation by giving the following example: "This section will provide ... a public entity with protection against possible tort liability where it is claimed that an employee negligently misrepresented that the public entity would waive the terms of a construction contract requiring approval before changes were made." (Sen. Jour. (April 24, 1963) p. 1889.)
 [10] In short, "misrepresentation," as a tort distinct from the general milieu of negligent and intentional wrongs, applies to interferences with financial or commercial interest. The Legislature designed section 818.8 to exempt the governmental entity from this type of liability. [9b] Accordingly, however we may choose to characterize the parole officer's failure to give adequate warnings to plaintiff, section 818.8 does not apply to this case. *801
 The judgment is reversed and the case remanded to the trial court for proceedings in accordance with this opinion.
 Traynor, C. J., Peters, J., Sullivan, J., and Ford, J. pro tem., [fn. *] concurred.
 BURKE, J.
 I concur in the judgment.
 McCOMB, J.
 I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Kaus in the opinion prepared by him for the Court of Appeal in Johnson v. State of California (Cal.App.) 65 Cal.Rptr. 717.
 Plaintiff filed a declaration in opposition to the state's motion. She alleged, inter alia, that Baer "said absolutely nothing to me that the teen aged boy had a criminal record or was a juvenile delinquent. ... I thought I was getting a poor boy who did not have a home." She concluded that even if Baer "didn't know that the boy had homicidal and vicious tendencies, at least he could have told me I was getting a boy with a criminal and delinquent background."
 Since nothing in either of these affidavits conclusively proves the contrary, we must assume for purposes of this appeal from the granting of summary judgment that the youth had demonstrated dangerous propensities, that the state's agents knew or should have known of the existence of these dangers, and that they nevertheless failed to give adequate warning to the plaintiff. Trial on the merits of the plaintiff's complaint will of course resolve the underlying factual questions.
 The code sections establishing coextensive immunity do not, however, materially assist this court in determining the extent of that immunity in the first instance. We must still determine which actions are "discretionary." (Gov. Code, 820.2.) In so doing, we must of course rely primarily on the legislative purposes for granting dual immunity--to both government and official--for the latter's "discretionary" actions.
 Sections of the 1963 legislation that follow section 820.2 spell out "specific immunities ... in statutory form so that the liability of public entities and employees may not be expanded by redefining 'discretionary immunity' to exclude certain acts that had previously been considered as discretionary." (Senate Committee on Judiciary Comment to 820.2, Sen. Jour. (April 24, 1963) p. 1889.) But since, as will be explained infra, none of these sections covers the instant situation and since no pre-1963 California decision has held the parole officer's decisions as to warnings to be "discretionary," this legislative caveat offers us no assistance in the instant case; we must resolve it by the typical judicial process of interpreting legislation and applying it to a specific situation.
 In light of our previous discussion, plaintiff's position must prevail. Immunity for "discretionary" activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in "discretionary activity" is irrelevant if, in a given case, the employee did not render a considered decision. (See generally Jaffe, Judicial Control of Administrative Action, supra, p. 259; Peck, The Federal Tort Claims Act: A Proposed Construction of the Discretionary Function Exception, supra, 31 Wash.L.Rev. 207, 225-226.)
 The Senate Committee on Judiciary Comment to section 820.2 of the Government Code (immunity for "discretionary functions") recognizes that section 845.8, inter alia, constitutes a specific example of this "discretionary" immunity. This comment provides: "In the sections that follow, several immunities ... are set forth even though they have been regarded as within the discretionary immunity. These specific immunities are stated in statutory form so that the liability of public entities and employees may not be expanded by redefining 'discretionary immunity' to exclude certain acts that had previously been considered as discretionary." (Sen. Jour. (April 24, 1963) p. 1889.)
NOTES
[fn. 1] 1. In support of this motion, the state filed a declaration by William Baer, which reads as follows: "I, William Baer, declare and state: That I am a duly authorized Parole Agent of the Department of Youth Authority, State of California .... On June 22, 1963, Gary Lee Chemlouski was paroled by the California Youth Authority for placement. ... One of my functions as a parole agent involved finding suitable foster homes for children. The names of Ina Mae Johnson and Floyd N. Johnson were made available to me by a friend of theirs who knew a parolee, not Gary Lee Chemlouski, who needed a foster home. I contacted the Johnsons and interviewed them about taking a teen-age foster child. They were referred to the Los Angeles County Bureau of Licensing and were subseqeuntly approved to board a teen-age boy. The above mentioned parolee was not placed with the Johnsons because relatives were found who took him. Mrs. Johnson was contacted by me on September 12, 1963, and the placing of Gary Lee Chemlouski was discussed with her. She agreed to have Gary placed with her and he was so placed on September 13, 1963."
[fn. 2] 2. Since the question of whether a party owes a "duty" of care to a particular plaintiff often intermeshes with, and overlaps into, the question of whether a party acted carelessly or negligently, both involving the degree of foreseeability of various risks (cf. Dillon v. Legg (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912]), the statement in the text may be subject to some qualification--for example, in cases in which sufficiently important policy objectives, achievable only by silence, outweigh the obvious interest in cautioning persons exposed to danger. We need not dwell on this question at length, however, because the state offered no such justification for its failure to warn in the instant situation; indeed, at the summary judgment stage of the proceedings it could not do so.
[fn. 3] 3. Several commentators (see, e.g., James, Tort Liability of Governmental Units and Their Officers (1955) 22 U.Chi.L.Rev. 610, 650; Peck, The Federal Tort Claims Act: A Proposed Construction of the Discretionary Function Exception (1956) 31 Wash.L.Rev. 207, 223-224) and courts (e.g., Lipman v. Brisbane Elementary Sch. Dist. (1961) 55 Cal.2d 224, 229 [11 Cal.Rptr. 97, 359 P.2d 465]; cf. Muskopf v. Corning Hospital Dist. (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]) have criticized legal systems in which the immunity of the public entity corresponds to that of the employee. They point out that the reasons for granting immunity to the employee may well differ materially from the reasons for granting immunity to the governmental unit. But since the California Legislature, in the Tort Claims Act of 1963, enacted legislation that provides largely for coextensive immunity (see Gov. Code, 815.2), our function is of course limited to interpreting this act.
[fn. 4] 4. The Legislature in fact specifically approved the Lipman approach in defining "discretionary" acts. The Senate Committee on Judiciary Comment to section 820.2, part of the 1963 codification of sovereign immunity law, states: "This section restates the pre-existing California law," citing Lipman, inter alia. (Sen. Jour. (April 24, 1963), p. 1889.)
[fn. 5] 5. It is noteworthy that these exceptions, in addition to limiting liability to a narrow range of actions by public employees, only require the employee to persuade his employer that he acted in good faith and in the course of his employment. An injured member of the public bringing a tort suit may well take an adamant and even unreasonable position. On the other hand, the governmental entity, which will probably maintain continuous contacts with the employee whose conduct is at issue, and in any event must consider the effects of its actions on the conduct and morale of its other employees, will probably take a much more reasonable position. Accordingly, the California system, by eliminating the possibility that the public employee will be at the mercy of an injured member of the public, further decreases the danger of "dampened ardor" arising from fear of a lawsuit.
[fn. 6] 6. This discussion rests upon the somewhat unrealistic assumption that public employees, in deciding how to execute their responsibilities, consciously or unconsciously place heavy reliance on the danger of personal liability. Yet this assumption cannot be ignored. It must be recognized as a factor in considering whether tort suits will "dampen the ardor" of public employees. If indemnification protections nullify such personal liability, Judge Hand's analysis offers no reason for any immunity, whether individual or governmental.
[fn. 7] 7. A public employee's conduct might, for example, be affected by the possibility of governmental liability in that a suit could disclose errors by him that might otherwise remain undiscovered by his supervisors. Or, even assuming that the supervisors discovered his mistake, the possibility of a tort suit might tend to aggravate the disciplinary action against him. As explained in the text, however, these influences on balance are wholesome, and thus do not provide a reason for expanding the immunity of the governmental unit.
[fn. 8] 8. This conclusion disposes of the question, extensively briefed by the parties, whether the governmental entity, to be entitled to immunity, must show that its employee actually reached a considered decision knowingly and deliberately encountering the risks that give rise to plaintiff's complaint. The Attorney General relies on Doeg v. Cook, supra, 126 Cal. 213, 216, Ne Casek v. City of Los Angeles, supra, 233 Cal.App.2d 131, 134, and Tomlinson v. Pierce (1960) 178 Cal.App.2d 112, 116-117 [2 Cal.Rptr. 700], all of which refer to the "nature of the [employee's] duty" and to whether the employee engages in a "discretionary activity," to support the argument that the state need only demonstrate that the employee's general course of duties is "discretionary" and need not prove that, as to the specific conduct giving rise to the suit, the employee consciously assumed certain risks in making a policy decision. Plaintiff, on the other hand, points out that section 820.2 posits immunity on whether "the act or omission was the result of the exercise of the discretion"; accordingly, plaintiff contends that the state must prove that the employee, in deciding to perform the act that led to plaintiff's injury, consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives.
[fn. 9] 9. In fact, section 845.8 of the Government Code specifically provides for immunity with respect to the general decision to parole a prisoner: "Neither a public entity nor a public employee is liable for: (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release."
[fn. 10] 10. These cases effectively rebut the state's reliance on Morgan v. County of Yuba, supra, 230 Cal.App.2d 938 (sheriff undertook to warn plaintiff upon prisoner's release from jail and failed to do so, allowing ex-prisoner to injure plaintiff) and United States v. White, supra, 211 F.2d 79. These cases, the state argues, establish the proposition that only if "specific express assurances [are] made to plaintiffs regarding the situation at hand on which the respective plaintiffs relied, "the governmental entity loses its immunity. In fact, as described above, several cases not involving any "specific express assurances" have relied on a "failure to warn" theory in holding the government liable. In any event, the relationship between the parole officer and plaintiff in the instant case was such that a failure of the officer to mention any dangerous propensities in the youth constituted a functional equivalent, in terms of the probability of detrimental reliance by the plaintiff, to an explicit representation that no such propensities existed. Thus, both the case law and sound policy support our refusal, for purposes of section 820.2, to distinguish between nondisclosure and misrepresentation.
[fn. *] *. Assigned by the Chairman of the Judicial Council.