[Civ. No. 28608. First Dist., Div. Four. Mar. 22, 1971.]

VINCENT HERNANDEZ et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Gregory S. Stout for Petitioners.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Derald E. Granberg and Don Jacobson, Deputy Attorneys General, for Respondent and Real Party in Interest.

## OPINION

**DEVINE, P. J.**—This petition has to do with arrest of a parolee and with the ensuing search of his home. An all-points bulletin to law enforcement agencies for the arrest of petitioner Vincent Hernandez, a parolee, was issued because he had violated parole by changing his residence without permission and by failing to submit a monthly report to his parole agent. Four San Francisco police officers (the leader of whom had seen the teletype which gave the fact that Hernandez had been committed for selling narcotics) went to Hernandez' apartment and rang the door bell. Hernandez opened the door, saw two officers and immediately tried to close the door and to hide behind it. The officers pushed the door open and entered. A balloon was taken from Hernandez' hand. It was found later that it contained heroin. One officer then entered the kitchen and saw, in plain view, narcotics paraphernalia: syringes, needles, balloons, cotton and a funnel. He testified that he had gone into the room to see if there was anyone there. Another officer went into a room which was a combination living room with bedroom and found that there was, indeed, someone there, the other petitioner, Anita Carlson, who was sitting on the bed. The same officer entered from the hallway a walk-in closet and found a loaded revolver, on top of a bureau.

Vincent Hernandez and Anita Carlson were held to answer on a charge of possession of heroin and Hernandez has been charged with possession of a concealed weapon by an ex-felon. Motions under Penal Code section 1538.5, for suppression of evidence, having been denied, there followed the instant petition for writ of prohibition.

■ Petitioners' first point is that the all-points bulletin was invalid because it was not based on probable cause supported by oath or affirmation. Petitioners cite *People* v. *Sesslin,* 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321]. But while parole may be revoked only for good cause, it may be suspended and the parolee's return may be ordered upon official accusation. Detailed recitation is unnecessary. The renewed custody is not sought for a fresh offense to be charged and proved (although a new offense may come to light, as in this case), but upon a former conviction which has been followed by the grace of parole. (*In re Cleaver,* 266 Cal. App.2d 143, 157-158 [72 Cal.Rptr. 20].)

■ Petitioners' second point is that the officers violated Penal Code section 844, which applies to arrests of parolees (Pen. Code, § 3061; *People* v. *Rosales,* 68 Cal.2d 299, 303-304 [66 Cal.Rptr. 1, 437 P.2d 489]), by entering without stating their authority and their purpose. But the officers did not have opportunity to do so. They were not required to announce anything before the door was opened, because they were not then "breaking" (or entering) the premises. The rapid reaction of Hernandez prevented a solemn declaration when the door was momentarily opened. To have hesitated while he was attempting to bar the police from action might have frustrated the arrest and exposed the officers to danger. The fact that a loaded weapon was but a few feet away, within a closet, was not known to the officers, to be sure, but that fact is illustrative of what may be at hand in arrests at a house.

■ Petitioners argue—and this, we take it, is their principal point—that there was a search which exceeded the bounds set by *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], because it went beyond the area in which Hernandez might have seized a weapon or destructible evidence.

Respondent proposes two answers to this: the first, that a complete search was permissible because the parole agents had authorized the arrest, and impliedly authorized a complete search. Search by parole officers, whether or not they are accompanied by conventional law enforcement officers, is allowable, probably under circumstances which do not constitute a full showing of probable cause. (*In re Martinez,* 1 Cal.3d 641 [83 Cal. Rptr. 382, 463 P.2d 734].) But it is an exceedingly doubtful proposition that by merely authorizing an arrest, the parole officers actually authorize, or may validly authorize, other peace officers, unaccompanied by parole agents, to make a search of the parolee's home upon the arrest of a parolee. We do not accept the proposition in this case wherein, as presently appears, it is unnecessary; but we abstain from declaring it invalid, for to do this, too, is unnecessary.

■ Respondent's second proposition is that the officers' actions were justified by the exception for impracticability of proceeding by warrant, as recognized in *Chimel*. With this we agree. For although the arrest of Hernandez just inside the doorway ordinarily would have completed the officers' duties (see *People* v. *Baca,* 254 Cal.App.2d 428 [62 Cal.Rptr. 182]), so that the rest of the premises ought not to be entered, in this case evidence of guilt of a present offense in addition to whatever had brought about the arrest was displayed by the extraordinary indiscretion of Hernandez in having the balloon in his hand even as he opened the door. There was reasonable ground on evidence directly at hand for believing that more contraband was within the apartment. This is not so in cases where the officers' duty is simply to make an arrest. There is not probable cause to believe that contraband is present in a domicile just because someone is to be arrested at home. Moreover, the officers did not proceed to go through drawers, as was done in *Chimel*. They did not move things, push them aside, or "rummage." In looking for persons, they saw only what was in plain sight, and they saw these things from places where they had a right to be, in their general looking for persons. The closet in which the gun was found was not a mere locker, but a walk-in chamber in which a person might be standing.

The officers had three alternatives: One was to remove Hernandez upon his arrest, close the door and depart without taking further action of any kind. But while this would have fulfilled their duty in making the arrest, it would have left undetected any person who might be a possessor of narcotics within the apartment, despite the evidence that narcotics probably were there; would have allowed either the destruction of such narcotics as evidence or, on the other hand, their use or sale. A second duty of the police, a very important one, would have been abdicated.

Another alternative would have been for all the officers to leave, with the intention of returning with a warrant. But to have believed that everything would remain untouched within the house if some person were within, would have been folly.

Another choice would have been for some officers to leave and to procure a search warrant while others remained scrupulously within the hallway where the arrest had been made, so that their vision might not fall upon anything beyond the immediate area of the arrest. Meanwhile, suppose the remaining occupant, Miss Carlson, had gone into the kitchen. Must the officers remain immobile, hoping for quick return of their fellows armed with a warrant? Or, if they could then follow Miss Carlson, thus seeing that which a supposed constitutional modesty had forbidden them to see, on what principle could they do so which did not

exist at the moment they found the balloon in Hernandez' hand? It would not suffice to say that once the presence of another person was detected by some movement or noise, other rooms could be entered. Police action so circumscribed would be reduced unreasonably to ineffectiveness. (See *People* v. *Kampmann,* 258 Cal.App.2d 529, 533 [65 Cal.Rptr. 798].) Moreover, there would be present an unwarranted element of danger if every door must remain closed, concealing whomever and whatever. A careful reading of *Chimel* shows that it is meant to protect a person who is arrested at his home from offensive search which goes beyond the necessities of the case, which usually are no more than those of the arrest itself. It was not meant, we are convinced, to protect persons in possession of contraband or the contraband within a house when evidence of its presence is shown at the moment of the arrest.

Petition for writ of prohibition is denied and the alternative writ is discharged.

Rattigan, J., and Christian, J., concurred.