[Civ. No. 42677. Second Dist., Div. Two. May 29, 1974.]

ANTIQUE ARTS CORPORATION, Plaintiff and Appellant, v. CITY OF TORRANCE, Defendant and Respondent.

**COUNSEL**

John K. Trotter, Jr., for Plaintiff and Appellant.

Buck & Smith and F. Eugene Westhafer for Defendant and Respondent.

**OPINION**

**ROTH, P. J.**—Plaintiff-appellant, Antique Arts Corp., dba Star of Siam (Siam) appeals from a judgment of dismissal entered after the general demurrer of respondent, City of Torrance, to Siam's second amended complaint was sustained without leave to amend.

On August 10, 1971, in the City of Torrance, a silent burglar alarm installed on the premises of Siam was, during the course of a robbery by two armed men, activated at 3:32 p.m. and the alert message was relayed to respondent's police department where it was apparently received at 3:32 p.m. Siam alleges on information and belief that the police dispatcher "negligently and carelessly failed to broadcast a dispatch message to units in the field . . . caused a lengthy delay which . . . in fact allowed the robbers to escape . . . ." Siam directly alleged that the broadcast to the units in the field was at 3:43 p.m., and that a police unit arrived at the scene at 3:44 p.m., one minute after receiving the message; and that the 10-minute delay in transmission of the alert enabled the robbers to complete the robbery and to escape with jewelry and mer-

chandise in the amount of $49,000.[1] A claim for damages was timely filed with respondent and was rejected.

Siam concedes that a public entity is not required to provide police protection (Gov. Code, § 845),[2] but ignores section 846[3] which relieves an officer from liability for failure to make an arrest. Although Siam concedes that a public employee is not responsible for an act or omission which results from the exercise of discretion "vested in him, whether or not such discretion be abused." (Gov. Code, § 820.2),[4] it argues that the quoted act of negligence was a failure to perform a ministerial act at the lowest ministerial rung of official action; that such negligence, to wit, the 10-minute delay of the dispatcher, was the causal or proximate cause of its loss and that respondent is legally required to make it whole. Siam relies on cases such as *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]; *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453]; *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508]; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744 [84 Cal.Rptr. 257] and *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312].

The cited cases discussed, *infra,* apply to special relationships which create an affirmative governmental responsibility, irrespective of whether it is called discretionary or ministerial, the breach of which is the causal and proximate cause of a loss suffered by the complaining party.

Initially it is obvious to us that the alleged 10-minute delay of the police dispatcher was not the causal or proximate cause of Siam's loss. The one and only cause was the robbery.

Whether the immediate presence of police on the scene of a robbery could have prevented it and/or resulted in the recovery of loot after the

---

[1]Siam asserts in its brief ". . . the suspect had departed just prior to the arrival of the police car . . ." This statement is not alleged, nor is there any allegation of how much time elapsed between the commencement of the robbery and its consummation. It is adverted to merely to emphasize the strained rationality which transmutes "technicality at the expense of reason." (*People* v. *Kampmann* (1968) 258 Cal.App.2d 529, 533 [65 Cal.Rptr. 798].)

[2]Government Code, section 845. "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

[3]Government Code, section 846. "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody."

[4]Unless otherwise indicated, all further section references shall be to the Government Code.

consummation of a robbery, or whether immediate police response to a concurrent transmission of the alert could have prevented the robbery or recovered the loot is a subject replete with speculation and conjecture. On either assumption, concurrent and aggressive police action to abort a robbery or prevent a loss could be unsuccessful and could result at best in a confrontation that would prevent neither and culminate not alone in the escape of the robbers, but also in personal injury or death to those involved and to innocent persons in the vicinity. Irrespective of section 845 and 846, the presence or absence of police before, during or after the robbery has in our opinion no such causal or proximate connection with a loss resulting from a consummated robbery as to a result in government liability.

"If zeal in making arrests is worthy of being encouraged by not making the deliberate choice of using minimal force subject to review by judge or jury, this goal would be effectively frustrated by making the manner of executing the course chosen subject to judicial scrutiny in a civil suit for damages such as this one. We accomplish nothing by fanning the officer's ardor one moment and extinguishing it the next." (*County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 483 [105 Cal.Rptr. 374, 503 P.2d 1382].)

Plaintiff's avowed theory that the alleged negligent omission of respondent was a ministerial act is fallacious. Siam's bare assertion that the duty to transmit a felony alert is one on the lowest rung of the ministerial ladder does not withstand scrutiny. To the contrary, it is a function impregnated with the same discretion which is required in the exercise of any vital and sensitive police function. Delay in the exercise of an alert may for good reasons be calculated.[5] If the delay alleged at bench was due to negligence and nothing else, it may be cause for departmental discipline—to assert that the delay at bench, even if it were legally defined as a ministerial act, was the causal and proximate cause of the robbery loss for which respondent is liable is to substitute speculation and conjecture for common sense.

The cases relied upon by appellant are predicated upon a special rela-

---

[5]There are many factors to consider, some of which by way of illustration and not limitation are: the number and types of units in the field; by whom they are manned; their locations; their availability; the number of and the preference to be given various complaints; the time of their occurrence and their location in relation to the location of the properly available units in the field. The nature of the dispatcher's function is obviously not a mere unthinking response. Delay in the transmission of an alert may be calculated. It is the type of act which creates no tort liability upon the dispatcher since "his act or omission . . . was the result of the exercise of discretion, vested in him, whether or not such discretion be abused." (Gov. Code, § 820.2.)

tionship. Siam squintingly argues without authority that the alarm system for which it contracted with a third person, which relays the alarm to the police station, created such a relationship. An alert from an alarm, irrespective of how transmitted, is no more than a complaint that a crime has been or is being committed. It is entitled to the same attention as any crime committed or in the process of commission, telephonically or otherwise reported by a bystander. Siam's suggestion that when police accept the alarm method of receiving information a special relationship is consummated implicitly argues that the police department has guaranteed the safety and security of the persons and property of all those who have made such arrangements. Thus, a police department, contrary to the established public policy of the state has assumed for the governmental entity an obligation which equates to a contractual guarantee of the consequences arising from the commission of a crime.

It is one thing to wash out sovereign immunity for negligent acts or omissions, ministerial or discretionary, because of a special relationship embraced within the cited cases, but it is quite another to contend that the limited scope of the cited cases permit a policeman or the chief of the department to substitute by way of contract express or implicit a rule which equates with strict tort liability. (Cf. *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855].)

California Tort Claims Act of 1963 (Stats. 1963, ch. 1681) sets forth a number of specific immunities for public entities in providing police protection. (See ch. 3 of div. 3.6 of tit. 1, commencing with § 844 of the Gov. Code.) In particular, section 845[6] provides for immunity if no police protection is provided, or if that protection is provided, or if that protection is not sufficient. Section 846[7] further provides that neither the public entity nor the public employee is liable for injuries caused by a failure to make an arrest or to retain an arrested person in custody.

In addition, section 818.2 provides that the public entity is not liable for injuries caused by failing to enforce any law, and section 821 provides that a public employee is not liable for injuries caused by failing to enforce any law.

The statutory scheme employed makes it clear that failure to provide adequate police protection will not result in governmental liability (*Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803 [75 Cal.Rptr. 240]), nor will a public entity be liable for failure to arrest a person who is vio-

---

[6]See footnote 2, *ante,* page 590.

[7]See footnote 3, *ante,* page 590.

lating the law. (Law Revision comment to § 821; *Tomlinson* v. *Pierce* (1960) 178 Cal.App.2d 112 [2 Cal.Rptr. 700]; *Rubinow* v. *County of San Bernardino* (1959) 169 Cal.App.2d 67 [336 P.2d 968].) The statutory scheme shows legislative intent to immunize the police function from tort liability from the inception of its exercise to the point of arrest, regardless of whether the action be labeled "discretionary" or "ministerial."

The cases relied upon by appellant are readily distinguishable since, as we stated in *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872, 875 [109 Cal.Rptr. 470]: "The critical element in those cases that have attached liability to a public employee's discretionary acts has been the presence of a special relationship between employee and plaintiff that justified reliance by plaintiff on the employee's statement or promise." (See *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453] [police officer investigating accident led plaintiff out into the middle of intersection where plaintiff was hit by another car; officer had not set out flares to warn approaching traffic]; *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508] [deputy sheriff voluntarily promised to warn decedent if defendant, who had made threats on her life, was released; defendant was released, but sheriff did not warn and heirs had cause of action against county]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352] [state in placing ward in plaintiff's home had a duty to warn of ward's vicious tendencies]; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744 [84 Cal.Rptr. 257] [state gratuitously gave out information concerning river levels; plaintiff, a marina owner, relied upon information that had been negligently prepared and as a result his marinas were damaged when the river rose higher than forecast; held that the complaint stated a cause of action]; *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312] [state botanist analyzed a plant substance upon request of patient's doctor; analysis was incorrect and when doctor treated in accordance with analysis the patient died; held that the state and the botanist could be subject to liability for wrongful death].)

The judgment is affirmed.

Compton, J., and Beach, J., concurred.