[No. A117960. First Dist., Div. Three. July 31, 2008.]

ALEXANDRA SKOUMBAS et al., Plaintiffs and Appellants, v.
CITY OF ORINDA, Defendant and Respondent.

## Counsel

Law Offices of Nick T. Reckas and Nick T. Reckas for Plaintiffs and Appellants.

Clapp, Moroney, Bellagamba & Vucinich and James G. Lucier as Amici Curiae on behalf of Plaintiffs and Appellants.

Lepper & Harrington, Gary M. Lepper and Paul V. Samoni for Defendant and Respondent.

## Opinion

**SIGGINS, J.**—Konstantine and Alexandra Skoumbas appeal the dismissal of their suit seeking damages for inverse condemnation, nuisance, and trespass, following a grant of summary judgment in favor of the City of Orinda (the City). The trial court concluded the City could not be held liable for erosion caused by water discharged from a storm drain because there was no evidence the entire drainage system was a public improvement owned by the City or its predecessor in interest. We conclude that the critical inquiry is not whether the entire system was a public improvement, but rather whether the City acted reasonably in its maintenance and control over those portions of the drainage system it does own. Accordingly, we conclude the existence of triable issues of material fact precluded the grant of summary judgment, and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The Skoumbas property consists of several undeveloped parcels of land on an Orinda hillside in an area known as the Oak Springs subdivision that was created in the 1920's. Their property is to the west and downhill from a subdivision, tract 2742, developed in the 1960's. Tract 2742 includes Candlestick Road, a publicly dedicated street that ends in a cul-de-sac. Surface water from the surrounding area of tract 2742 flows onto Candlestick Road, and is collected in a catch basin that channels the water into an underground metal pipe. The metal pipe runs under tract 2742, and continues downhill into the Oak Springs subdivision, where it discharges surface water near the uphill border of the Skoumbas property. The surface water discharge has allegedly caused substantial erosion and damaged the Skoumbas property. The City admits it owns Candlestick Road, the catch basin, and the first 40 feet of drainpipe, but contends it is not responsible for any flow of water below the first 40 feet of pipe because the City says the rest of the pipe is privately owned.

The drainage system for tract 2742 was originally constructed by the subdivision's developer.[1] As it was originally constructed, the Candlestick Road storm drain was an 18-inch diameter drainage pipe laid in a 10-foot drainage easement on lots 18 and 19 that extended downhill from the end of Candlestick Road and ended on lot 132 of the Oak Springs subdivision.[2] The county did not accept the streets in the Oak Springs subdivision for public use, and no easement was identified on the subdivision map within the boundaries of lot 132. When the subdivision map for tract 2742 was approved in 1960, the county board of supervisors "did not accept on behalf of the public any of the streets, roads, avenues or easements shown thereon as dedicated to public use."

The storm drainage from Candlestick Road was the subject of extended discussion between the developer and the county around that time. A county flood control official advised the developer: "[T]he storm drain at the westerly end of Candlestick Road has been improperly located and does not extend to Patricia Lane . . . . [¶] It is recommended that the existing storm drain be extended to Patricia Road, that a culvert with a[n] 'L' headwall be placed beneath Patricia Road to direct the storm flow into the natural channel to the southwest, and sacked concrete outlet protection be constructed. [¶] This work shall be accomplished under a 'change order' submitted by the developer to the Public Works Department accompanied by a drawing showing [relevant details]. [¶] It is urgent that the foregoing described work be completed at the earliest date."[3]

The developer's engineers then sent the flood control district a plan for "revisions to drainage at the end of Candlestick Road." The drawing showed

---

[1] The tentative map for the subdivision was conditionally approved in September 1959 after the developer obtained permission for "county approved drain lines . . . and a drain line that is to be installed on Tract # 2742, Orinda, to cross through Lot # 132, Unit 4, Oak Springs." The improvement plan was approved by the planning commission in November 1959 as recommended by the public works department.

[2] The street address of lot 18 is 21 Candlestick Road, and the property is owned by Mark and Gail Levie and the Levie Family 2004 Trust. The street address of lot 19 is 16 Candlestick Road and the property is owned by Eric and Laura Jorgensen. Lot 132 in the Oak Springs subdivision is owned by Mark Soloway and the Soloway Family Living Trust. It has a street address of 19 Patricia Road, and is located below the Levie and Jorgensen properties and above the Skoumbas property. The Soloway residence was constructed in the early 1980's.

[3] In its respondent's brief, the City states: "This court may take judicial notice that the 'Contra Costa County Flood Control and Water Conservation District' (though it includes the words 'Contra Costa County') is a public entity *separate and distinct* from Contra Costa County itself." The Contra Costa County Flood Control and Water Conservation District is a public agency that is specifically created by statute with the capacity to sue and be sued. (Stats. 1951, ch. 1617, §§ 2, 5, pp. 3639, 3640; West's Ann. Wat.-Appen. (1999 ed.) §§ 63-2, 63-5, pp. 464, 469.) It is not the County of Contra Costa. We need not take judicial notice of its status.

an extension to the existing pipe that included a new 24-inch pipe that crossed under Patricia Lane.[4]

In 1964, work was done to reconstruct and repair slide damage that affected Candlestick Road. As part of that work, Candlestick Road was shortened and repositioned. In its new configuration, the road ended some 40 feet away from the top end of the drain line that was originally installed by the developer of tract 2742. A new catch basin was constructed at the end of the street and 40 feet of pipe was laid to connect the catch basin to the original drain line. The new section of drain was placed in a portion of lot 18 of tract 2742 that was a county-owned easement. In March 1966, Candlestick Road, as relocated and reconstituted, was dedicated and accepted as a public road.[5]

It appears that erosion caused by the discharge from the storm drain off Candlestick Road was the subject of discussion between the county and an area property owner in 1964. An owner of property that adjoined lot 132 exchanged correspondence with the public works department in October 1964 where he said the "culvert and flume [from Candlestick Road] are now carrying the entire run-off of the hill. Over two previous rainy seasons this flume has discharged water to the extent that a gulley approximately twenty feet deep has been cut out of the soil." But it does not appear that the drain was repaired or replaced at that time. In 1965, the same property owner wrote to the public works department to say that while earth movement caused by grading activities on tract 2742 was repaired, "the cavern or ravine caused by [the] drainage pipe still exists." The public works department responded to the property owner in September 1965 that it would not take any further action on the matter. The parties now disagree over whether someone altered the lowest portion of the drainpipe at some later date.[6]

The Skoumbases sued the City and the uphill owners whose property is traversed by the pipe running from Candlestick Road, seeking recovery for damages caused by the water that discharged onto their property.[7] The complaint alleged nuisance and trespass claims against all defendants, and inverse condemnation against the City.

---

[4] It does not appear that the 24-inch pipe under Patricia Lane was ever constructed.

[5] The City was incorporated in 1985 and succeeded to the public property formerly owned by Contra Costa County.

[6] The City's brief refers to "factual uncertainties" regarding the origin of the lower end of the pipe. The City contends the pipe once terminated at a riprap outfall, and that the lower end of the pipe is of a different type than the upper end. The Skoumbases dispute both assertions, citing supporting evidence.

[7] The uphill property owners included the Jorgensens, the Levies, and the Soloways. The County of Contra Costa was also named as a defendant, but was later dismissed.

The City moved for summary judgment, asserting it had no responsibility for the discharge of the storm water because the lower portion of the storm drain was privately constructed and privately owned. Thus, the storm drain was not a public improvement. The Skoumbases opposed, arguing the City could be held liable because the water that damaged their property originated in a public improvement, and there were triable issues of fact as to the City's implied acceptance of the entire pipeline.[8] The trial court granted summary judgment for the City because there was no evidence the City expressly or impliedly accepted the lower segments of the drainage pipe as a public improvement.[9] The Skoumbases timely appealed.[10]

## DISCUSSION

### A. *Standard of Review*

We review the trial court's ruling on summary judgment de novo. (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100 [41 Cal.Rptr.3d 229]; *Schieding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].) We view the evidence in a light favorable to plaintiffs as the losing party, construe their evidentiary submission liberally and strictly scrutinize defendant's own showing. (*Andrews, supra,* at p. 100.) "Summary judgment is a drastic remedy to be used sparingly, and any doubts about the propriety of summary judgment must be resolved in favor of the opposing party." (*Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 17 [9 Cal.Rptr.3d 486].)

" 'A motion for summary judgment must be granted if all of the papers submitted show "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. In determining whether the papers show . . . there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, . . . and all

---

[8] The Soloways also filed opposition to the City's summary judgment motion.

[9] The trial court also concluded that "[u]ntil the City's ownership thus is established, the related 'reasonableness' of its conduct does not come into play."

[10] An amicus curiae brief in support of the Skoumbases has been filed by the Soloways, who were among the uphill property owners named as defendants in the complaint, but have since reportedly settled with the Skoumbases. The City has filed a response to the Soloways' amicus curiae brief. Amici curiae also contend the county and the City ignored a fundamental principle of drainage planning, namely the provision of a safe outfall, and "cannot simply divert this much hydraulic energy into a catch basin and then ignore how it will obviously be discharged a few hundred feet downhill." Thus, amici curiae argue, "there are triable issues of fact as to whether the City's diversion of surface water onto the Skoumbas and Soloway properties is 'reasonable,' under the facts and circumstances in this case, even if an intervening section of the pipeline in question is arguably on private property."

inferences reasonably deducible from the evidence . . . ." ([Code Civ. Proc.,] § 437c, subd. (c).) A defendant has met its burden of showing a cause of action has no merit if it "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show . . . a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." ' " (*Andrews v. Foster Wheeler LLC, supra,* 138 Cal.App.4th at p. 101.)

■ Our de novo review of the record leads us to conclude that the summary judgment in favor of the City must be reversed. We conclude the City did not establish that it had a complete defense to liability for damages to private property caused by water collected in a public catch basin off a public street and channeled into a section of public drainpipe. As a matter of law, the City's ownership and control of a portion of the drainage system makes the City potentially liable for damage substantially caused by the City's unreasonable diversion of water through the City-owned portions of the system.

### B. *Liability for a Public Agency's Diversion of Surface Water*

■ "Water diffused over the surface of land, or contained in depressions therein, and resulting from rain, snow, or which rises to the surface in springs, is known as 'surface water.' It is thus distinguishable from water flowing in a fixed channel, so as to constitute a watercourse, or water collected in an identifiable body, such as a river or lake. The extraordinary overflow of rivers and streams is known as 'flood water.' " (*Keys v. Romley* (1966) 64 Cal.2d 396, 400 [50 Cal.Rptr. 273, 412 P.2d 529].) Plaintiffs are suing to recover for damage to their property resulting from the discharge of surface water from tract 2742 that has been diverted into the culvert and storm drain at the end of Candlestick Road. They assert claims for nuisance, trespass and inverse condemnation.

■ Article I, section 19 of the California Constitution permits private property to be "taken or damaged for a public use . . . only when just compensation . . . has first been paid to, or into court for, the owner." ■ When incidental damage to private property is caused by governmental activity, but the government has not reimbursed the property owner, a suit in "inverse condemnation" will lie to recover monetary damages for "special injury." (*Locklin v. City of Lafayette* (1994) 7 Cal.4th 327, 362 [27 Cal.Rptr.2d

613, 867 P.2d 724].) This constitutional right to recover for inverse condemnation was originally thought to provide a broader right for individuals to recover against the government than they would have against a private party, as it was unnecessary to prove negligence or commission of a tort by the government. (*Ibid.*) But in cases of damage caused by flowing water, the prevailing theory was that if a private party would have the right to inflict damage on the plaintiff's property, the government could assert the same immunity. (*Ibid.*; *Archer v. City of Los Angeles* (1941) 19 Cal.2d 19, 23 [119 P.2d 1].)

This unique immunity recognized in inverse condemnation became known as the "*Archer* exception" and "involved the circumstances, peculiar to water law, in which a landowner had a right to inflict damage upon the property of others for the purpose of protecting his or her own property. Such circumstances included the erection of flood control measures (the common enemy doctrine) and the discharge of surface water into a natural watercourse (the natural watercourse rule). Under private water law analysis, these rules immunized the landowner from liability for resulting damage to downstream property." (*Arreola v. County of Monterey* (2002) 99 Cal.App.4th 722, 738 [122 Cal.Rptr.2d 38].) But in recent cases, the *Archer* exception has been curtailed and the murky rules pertaining to liability imposed upon government entities for damage caused by flowing water have been refined. (See *Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550 [253 Cal.Rptr. 693, 764 P.2d 1070]; *Locklin v. City of Lafayette, supra,* 7 Cal.4th 327; *Bunch v. Coachella Valley Water Dist.* (1997) 15 Cal.4th 432 [63 Cal.Rptr.2d 89, 935 P.2d 796].)

■ Under modern authorities, the liability of public agencies for diversion of surface waters into a natural watercourse is relatively clear. "[T]he public agency is liable only if its conduct posed an unreasonable risk of harm to the plaintiffs, and that unreasonable conduct is a substantial cause of the damage to plaintiff's property. The rule of strict liability generally followed in inverse condemnation [citation] is not applicable in this context." (*Locklin v. City of Lafayette, supra,* 7 Cal.4th at p. 367.) In assessing a public agency's conduct under the reasonableness standard prescribed in *Locklin,* courts may consider (1) whether the damage to their property, if reasonably foreseeable, would entitle the plaintiffs to compensation; (2) whether it is likely that the public agency would refrain from diverting the water in light of a remote possibility of unseen and unforeseeable direct damage to the property; (3) whether the plaintiffs suffered direct physical damage to their property as the proximate result of the diversion as deliberately planned and carried out; (4) whether the cost of the damage can be better absorbed, and with less hardship, by the taxpayers rather than the plaintiff owners of the damaged property; and (5) whether if uncompensated the plaintiffs would contribute more than their fair or proper share to the public undertaking of the project.

(*Id.* at p. 368.) But in all cases, these considerations are limited to situations where the public agency's unreasonable conduct is a substantial cause of the damage to the plaintiffs' property.[11] (*Ibid.*)

In *Bunch v. Coachella Valley Water Dist., supra,* 15 Cal.4th 432, our Supreme Court adopted the rule of reasonableness articulated in *Locklin* to assess claims of inverse condemnation in cases where a public entity has diverted water in a flood control system that fails in a heavy rain and causes damage to property that has historically been subject to flooding. "*Bunch* reasoned that this reasonableness approach furthers the policies underlying the common enemy cases: it does not discourage beneficial flood control projects by making the government an insurer against flood damage, and yet compensates injured property owners who otherwise would be required to contribute a disproportionate share of the cost of the project." (*Pacific Bell v. City of San Diego* (2000) 81 Cal.App.4th 596, 613 [96 Cal.Rptr.2d 897].) In *Bunch,* our Supreme Court concluded that: "The *Belair/Locklin* reasonableness test applies to cases involving public flood control works that cause physical damage to private property . . . courts should use these factors in cases where a public entity's flood control measures, designed to protect against potentially dangerous periodic flooding, cause property damage." (*Bunch v. Coachella Valley Water Dist., supra,* at p. 454.)

Finally, a landowner's tort liability for the diversion of surface water is decided under a rule of reasonableness similar to that articulated in *Locklin.* When a landowner diverts surface waters in an unnatural manner and damages a lower property, the upper landowner is liable in tort to the extent he or she failed to take reasonable care in the use of the upper property. (*Keys v. Romley, supra,* 64 Cal.2d at p. 409.) This rule of liability is referred to as the modified "civil law rule." (*Ibid.*; see *Sheffet v. County of Los Angeles* (1970) 3 Cal.App.3d 720, 727–728 [84 Cal.Rptr. 11].) Simply stated, the modified civil law rule provides that: "1. If the upper owner is reasonable and the lower owner unreasonable, the upper owner wins; 2. If the upper owner is unreasonable and the lower owner reasonable, the lower owner wins; and 3. If both the upper and lower owner are reasonable, the lower owner wins also." (*Burrows v. State of California* (1968) 260 Cal.App.2d 29, 32–33 [66 Cal.Rptr. 868].)

### C. *Review of the Summary Judgment Granted in this Case*

The City does not dispute that it owns three drainage-related mechanisms relevant to this case. They are Candlestick Road, the catch basin at the end of

---

[11] The City's motion specifically declined to address causation and the record contains no evidence relied upon by the City to show it acted reasonably.

Candlestick Road, and the approximately 40-foot length of drainpipe laid in 1964 when Candlestick Road was reconfigured and relocated. Notwithstanding these facts, the City argues that it cannot be held liable to plaintiffs because it does not own the lower stretches of drainpipe, and thus should not be held responsible for "water which passes through public-owned segments . . . wherever and however it may flow in private segments or on private property thereafter." We disagree. The City's asserted lack of ownership or involvement in development of the lower portion of the drainage system off Candlestick Road is not a complete defense to its possible liability to plaintiffs.

As the City claims, in order for it to be held liable in inverse condemnation, damage to plaintiffs' property must occur as a result of a public improvement, public work, or public use. (*Ullery v. County of Contra Costa* (1988) 202 Cal.App.3d 562, 568–569 [248 Cal.Rptr. 727].) This is true as far as it goes, but it does not go far enough.

Plaintiffs are suing over damage to their property caused by the outfall of storm water diverted from Candlestick Road and emanating from a public improvement, to wit: Candlestick Road, the catch basin and the initial section of pipe. Under the balancing test that applies to claims of government liability for property damage caused by drainage of surface water to control flooding, the relevant question is whether the City's ownership, operation or control of the improvements to Candlestick Road, the catch basin and the 40-foot pipe were unreasonable or posed an unreasonable risk of harm to plaintiffs, and whether the City's unreasonable conduct was "a substantial cause of the damage to plaintiff's property." (*Locklin v. City of Lafayette, supra*, 7 Cal.4th at p. 367.)

It is immaterial that the City may not own the entire section of drain emanating from Candlestick Road and ending somewhere on the lower part of lot 132 of the Oak Springs subdivision. The City may be liable in inverse condemnation if the City owned improvements have a " ' "substantial" cause-and-effect relationship' " to plaintiffs' damage, provided that no other forces alone produced the injury. (*Belair v. Riverside County Flood Control Dist., supra*, 47 Cal.3d at p. 559.)

The authorities principally relied upon by the City do not persuade us otherwise. In *Ullery v. County of Contra Costa, supra*, 202 Cal.App.3d 562, the county was not liable for inverse condemnation because it owned no part of a creek bed in a natural watercourse that traversed private property. The county had expressly rejected the developer's offer of dedication of a drainage easement within the natural watercourse and never improved, maintained, or repaired the creek bed. (*Id.* at pp. 567–570.) Approval of a

subdivision map, standing alone, was insufficient to create liability. (*Id.* at pp. 570–571.) The *Ullery* court specifically noted that the county "did not approve or actively construct a drainage system which diverted waters onto appellants' property." (*Id.* at p. 571.) In this case, the county, as the City's predecessor in interest, accepted Candlestick Road, the drainage culvert, and the first segment of the storm drain as public property. That portion of the drainage system is a public work.

The City also relies on what it views as "the remarkably congruent precedent of *DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329 [95 Cal.Rptr.2d 16]." We consider *DiMartino* unpersuasive in this context. In *DiMartino*, the plaintiffs sought damages for diminution in the value of their home due to the existence beneath it of a deteriorated metal drainpipe.[12] (80 Cal.App.4th at p. 332.) The trial court found the city liable for inverse condemnation, and awarded damages for the cost of relocating the pipe into an existing drainage easement. (*Id.* at p. 335.) The appellate court reversed because there was no evidence to support the trial court's findings that the city or county substantially participated in the planning, construction, or maintenance of the drainpipe, exercised dominion or control over the pipeline, or expressly or impliedly accepted dedication of the pipe. (*Id.* at p. 344.)

Neither the public entities nor the plaintiffs in *DiMartino* were aware of the location of the pipe until it was discovered "during design stages of a planned remodel." (*DiMartino v. City of Orinda, supra,* 80 Cal.App.4th at p. 333.) There the court concluded: "The purpose of the pipe appears to have been entirely private: to permit construction of private residences on [the plaintiffs' lot and the adjoining lot], which otherwise would have been unbuildable due to waters flowing in a natural watercourse." (*Id.* at p. 344.) Here, the City concedes "[i]t is true that the drainage 'system' designed for drainage of the subdivision has been used by all residents and the City since its inception," and there is no evidence the property through which the pipeline passed was "otherwise . . . unbuildable due to waters flowing in a natural watercourse" (*ibid.*).[13] *DiMartino* is factually distinguishable.

Unlike *DiMartino*, this case does not involve the failure, replacement and relocation of a secret subterranean drain. It involves potential liability for

---

[12] The pipe that ran under the *DiMartino* plaintiffs' home was connected through a manhole on the adjoining lot to a city-owned culvert that crossed under the public road. (*DiMartino v. City of Orinda, supra,* 80 Cal.App.4th at pp. 332, 343.)

[13] While the City now suggests that the pipe should be treated as a natural watercourse that it was entitled to use for drainage, the City cites no evidence that the pipe was placed in an existing stream bed. (Cf. *Locklin v. City of Lafayette, supra,* 7 Cal.4th at p. 362 ["a governmental entity may, if it acts unreasonably, be liable in inverse condemnation for damage caused by its discharge of surface water runoff from property which it has improved into a natural watercourse"].)

the diversion of surface water. Where a public improvement is unreasonably a substantial cause of the plaintiff's damage, a public agency may be liable for its role in diverting surface water in order to protect urban areas from flooding. (See *Bunch v. Coachella Valley Water Dist., supra*, 15 Cal.4th 432; *Locklin v. City of Lafayette, supra*, 7 Cal.4th 327; *Belair v. Riverside County Flood Control Dist., supra*, 47 Cal.3d 550; *Arreola v. County of Monterey, supra*, 99 Cal.App.4th 722.) In such cases, "[t]he reasonableness of the public agency's conduct must be determined on the facts of each individual case, taking into consideration the public benefit and the private damages in each instance." (*Belair, supra*, at p. 566.)

■ The City argues for some type of whole ownership rule, asserting that an entire drainage system must be a public improvement in order to find a government agency liable in inverse condemnation for downstream damage caused by diverted surface water. Such a whole ownership requirement is not found in the standard that applies to cases asserting inverse condemnation as a result of diverted surface water, and is belied by the facts in the leading cases in this area. (See, e.g., *Locklin v. City of Lafayette, supra*, 7 Cal.4th at pp. 371–375 [discussing liability of the city, California Department of Transportation, Bay Area Rapid Transit, the county and flood control district]; *id.* at p. 378 (conc. opn. of Mosk, J.).) We will not adopt such a rule.[14]

"*Belair, Locklin*, and *Bunch* embody policies that recognize that inverse condemnation recovery be equitable, that support the importance of public works projects, and that ensure that the public entity be liable only for the proportionate amount of damage caused by its actions. Our conclusion furthers these policies and also has the further laudable effect of encouraging public entities to engage in flood control efforts while discouraging them from making uncompensated use of private property." (*Odello Brothers v. County of Monterey* (1998) 63 Cal.App.4th 778, 792 [73 Cal.Rptr.2d 903].)

The tort liability of the City as an upper landowner may be decided under the modified civil rule expressed in *Keys v. Romley, supra*, 64 Cal.2d 396, that also turns on the relative reasonableness of the parties' conduct. This inquiry too, is highly factual and seems unsuited as the basis for summary judgment in this case.

---

[14] The City's theory may also be at odds with the definition of "Public work or improvement" contained in the eminent domain provisions added to the California Constitution following the passage of Proposition 99 on June 3, 2008. The Constitution defines a public work or improvement to be, in part, "water-related and waste water-related facilities or infrastructure . . . and private uses incidental to, or necessary for, the public work or improvement." (Cal. Const., art. I, § 19, subd. (e)(5).) Because established case law demonstrates the impropriety of the grant of summary judgment, we do not consider the potential effect of this recent addition to the California Constitution in this case. Nor need we address whether the conduct of the City or its predecessor in interest gave rise to implied acceptance of the lower sections of the pipe.

## DISPOSITION

The judgment is reversed.

McGuiness, P. J., and Pollak, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 22, 2008, S166547. Werdegar, J., did not participate therein.