Filed 6/28/24  Colbert v. Callejas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ZURI K. COLBERT et al., | C098344 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2021-00301184) |
| v. | |
| MICHELLE CALLEJAS et al., | |
| Defendants and Respondents. | |

Plaintiffs Zuri K. Colbert and Nafisah Timmons sued defendants County of Sacramento (County) and County employees Michelle Callejas, Lisa Wullenwaber, and Zackary Kollross for fraud and negligence based on child protective services records linking plaintiffs with individuals who had a history of committing serious abuse.  The trial court granted defendants' motion for judgment on the pleadings and denied leave to amend, finding defendants immune from liability for making misrepresentations.  On appeal, plaintiffs argue the trial court erred in granting the motion.  We reverse the denial of leave to amend.

1

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, in propria persona, filed a complaint against defendants on May 21, 2021, and then an amended complaint on June 10, 2021.[1] The amended complaint, handwritten on a Judicial Council form, asserted causes of action for fraud and negligence.

As best as we can glean, the amended complaint alleged defendants maintained erroneous records linking plaintiffs with unrelated third parties sharing the same names and who have sustained child protective services allegations. For fraud, plaintiffs alleged the County acknowledged the records were inaccurate but "these horrific and unexplainable [discrepancies] continue." And the copy of the records the County provided plaintiffs "concealed and [suppressed] facts by redacting client name and referral I.D.'s." Plaintiffs checked boxes asserting "defendant knew [the representations] were false" and that "[d]efendant concealed or suppressed material facts" "defendant was bound to disclose."

For negligence, plaintiffs reasserted the County associated plaintiffs with "unknown individuals" and alleged it shares this information with other County departments "as well as outside government entities." The amended complaint states it alleges causes of action generally against all defendants, the two causes of action are specifically alleged against only the County, and the allegations contained within the

---

[1]     A filed version of the amended complaint is not in the record, even though plaintiffs specifically requested it to be included. It is plaintiffs' burden to guarantee a complete record. (See *Bains v. Moores* (2009) 172 Cal.App.4th 445, 477-478.) But there is a version of the amended complaint, without a file stamp, attached to a motion plaintiffs filed with the trial court. Plaintiffs asserted in the motion the document was a "true and correct copy" of the amended complaint. Defendants note this is "an unofficial document purporting to be the amended complaint," but do not assert this version differs from the filed version. We consequently rely on this document as the amended complaint for our review.

2

causes of action reference a "[child protective services] [g]atekeeper" as the individual who supplied the inaccurate records and Kollross, the County's custodian of records, as the individual that verified the records were true and correct copies of plaintiffs' records.

Plaintiffs requested exemplary damages based on: "hav[ing] suffered and continu[ing] to endure emotional distress, defamation of character, legal expenses, and general fear"; "be[ing] severely violated with stalking, hacking, and on-going intentional usage of the severe [discrepancies] but still no security and safety measures implemented as required"; and violations to them, their "small business, and civil rights for [their] family." Plaintiffs sought exemplary damages of $500,000.

Defendants filed an answer on October 1, 2021, and a motion for judgment on the pleadings on September 12, 2022.

The trial court granted defendants' motion. For the fraud cause of action, the court noted defendants argued plaintiffs failed to allege sufficient facts for fraud but the court "decline[d] to rule on this argument because it [found] [d]efendants' immunity argument . . . dispositive." The trial court explained Government Code[2] sections "822.2 and 818.8 provide governmental entities and employees immunity from liability for misrepresentations" and "[h]ere, the [amended complaint] alleges intentional or negligent misrepresentation and/or concealment based on [d]efendants furnishing records that contained inaccurate information. The [amended complaint] lacks any factual allegations that [d]efendants acted for corrupt purposes and/or with malice towards [p]laintiffs. The [amended complaint] also does not cite or refer to any particular statutory provision that creates liability on the part of any of the [d]efendants. Thus, the [c]ourt finds the fraud claim is not sufficiently pled and is subject to immunity under . . . sections 818.8, 822.2, and 815."

---

[2] Undesignated section references are to the Government Code.

3

For the negligence cause of action, the trial court similarly found, "Even assuming [p]laintiffs had sufficiently pled a claim for negligence, the [c]ourt finds [d]efendants are immune from liability pursuant to . . . sections 822.2, 815.2, 818.8, and 815 for the same reasons as discussed above."

The trial court also explained it was granting the motion without leave to amend because plaintiffs "did not identify how the legal infirmities could be fixed. [Colbert] also stated that the immunities asserted by [defendants] were 'valid.' Because the [c]ourt ha[d] not been shown how the pleading could be successfully amended, the motion [was] granted for the reasons set forth in the tentative ruling and leave to amend [wa]s denied." The trial court entered judgment on February 17, 2023.

Plaintiffs appeal.

DISCUSSION

Plaintiffs argue the trial court's order granting defendants' motion for judgment on the pleadings must be reversed because public entity and employee misrepresentation immunity only applies to suits involving financial or commercial interests. Quoting case law, plaintiffs assert, " '[T]he immunity provided governmental entities and public employees by sections 818.8 and 822.2 does not shield the County from liability for misrepresentation and deceit in this social service area.' " (See *Michael J. v. Los Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 872 (*Michael J.*).) Plaintiffs contend this exclusion applies to their suit. Defendants counter that plaintiffs forfeited this argument by not making it before the trial court. And even if we did consider this argument, defendants contend the closest plaintiffs come to identifying injury is by "alleg[ing] defamation of character and legal expenses among the damages they have suffered. [Citation.] These appear to encompass financial or commercial concerns." We conclude plaintiffs' position is more persuasive given the posture of the case.

4

# I

*Legal Standards*

"In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo. 'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the [operative pleading], supplemented by any matter of which the trial court takes judicial notice, to determine whether [the party] has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' " (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.)

"We review the trial court's decision denying leave to amend for abuse of discretion." (*Olson v. Hornbrook Community Services Dist.* (2019) 33 Cal.App.5th 502, 516.) Typically, "leave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations. [Citation.] If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer [or motion for judgment on the pleadings], leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.) Consequently, "it is an abuse of discretion to grant a motion for judgment on the pleadings without leave to amend ' "if there is any reasonable possibility that the plaintiff can state a good cause of action." ' " (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 260.)

In California, "[e]xcept as otherwise provided by statute," "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a).) One statute states public entities are "liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his [or her] employment if the act or

omission would, apart from this section, have given rise to a cause of action against that employee or his [or her] personal representative." (§ 815.2, subd. (a).) This "[v]icarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.) But public entities are "not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." (§ 818.8.) Similarly, public employees are "not liable for an injury caused by [their] misrepresentation, whether or not such misrepresentation be negligent or intentional, unless [they are] guilty of actual fraud, corruption or actual malice." (§ 822.2.)

As we have recognized, the term "misrepresentation" as used in the public immunity statutes " 'potentially lends itself to extremely expansive and elusive interpretations.' " (*Jopson v. Feather River Air Quality Management Dist.* (2003) 108 Cal.App.4th 492, 495.) Our Supreme Court in *Johnson* found public entities and employees' immunity from misrepresentations applies only to "interferences with financial or commercial interest." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 800 (*Johnson*).) Our Supreme Court noted the United States Supreme Court had found misrepresentation under the analogous Federal Tort Claims Act section " ' "has been identified with the common law action of deceit," and has been confined "very largely to the invasion of interests of a financial or commercial character, in the course of business dealings." ' " (*Johnson*, at p. 800.) This understanding was adopted in California because the Senate Judiciary Committee comment to section 818.8 states: "This section will provide . . . a public entity with protection against possible tort liability where it is claimed that an employee negligently misrepresented that the public entity would waive the terms of a construction contract requiring approval before changes were made." (*Johnson*, at p. 800.) Our Supreme Court concluded: "In short, 'misrepresentation,' as a

6

tort distinct from the general milieu of negligent and intentional wrongs, applies to interferences with financial or commercial interest.  The Legislature designed section 818.8 to exempt the governmental entity from this type of liability."  (*Ibid*.)

Subsequent cases have found it difficult to draw a clear line between immune misrepresentation affecting financial interests and nonimmune misrepresentations affecting nonfinancial interests.  In *Thomas*, Division Two of the Court of Appeal, First Appellate District suggested there is a "clear" distinction "between misrepresentations concerning risk of physical harm, which are not subject to immunity, and misrepresentations related to financial interests, which may be."  (*Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 640.)  But the *Thomas* court conceded this distinction "does not, however, resolve what types of financial interests justify application of misrepresentation immunity."  (*Ibid*.)  The *Thomas* court instead relied on how other "[c]ourts have applied misrepresentation immunity to cases involving a variety of financial interests."  (*Ibid*.)

Similarly, this court in *Jopson* noted that confusion may lie in the fact "every tort of 'negligent misrepresentation' involves both negligence and misrepresentation."  (*Jopson v. Feather River Air Quality Management Dist.*, *supra*, 108 Cal.App.4th at p. 497.)  We cited the Ninth Circuit that explained, "[T]he 'key distinction in this area is between the performance of operational tasks and the communication of information.' "  (*Id*. at p. 497, citing *Guild v. United States* (9th Cir. 1982) 685 F.2d 324, 325.)  But we did "not find the identification of operational tasks any less elusive than distinguishing between negligent misrepresentation and negligence."  (*Jopson*, at p. 497.)  Instead, we resigned in concluding:  "This academic exercise is, in the end, much ado about nothing. While the articulation of an easy formula may prove difficult, the facts of the state and federal immunity cases provide clear guidance.  Indeed, the facts of the relevant cases . . . offer the needed template for deciding the case now before us."  (*Ibid*.)  We shall follow these cases' lead and examine some relevant cases on the issue.

*Johnson* and *Michael J.* are examples for when the immunities do not apply.  In *Johnson*, a foster parent sued the state alleging it had "acted negligently" in a parole agent's failure to disclose a foster youth's " 'dangerous propensities' " to the plaintiff, whom the foster youth assaulted.  (*Johnson*, *supra*, 69 Cal.2d 782 at pp. 784-785.)  Our Supreme Court found the trial court improperly sustained the state's demurrer, stating, "[H]owever we may choose to characterize the parole officer's failure to give adequate warnings to plaintiff, section 818.8 does not apply to this case."  (*Id*. at pp. 799-800.)  Division Three of the Court of Appeal, Second Appellate District in *Michael J.* similarly concluded there was no immunity for a county that failed to disclose a prospective adoptee had a serious medical condition.  (*Michael J.*, *supra*, 201 Cal.App.3d at pp. 863-864, 866.)  After surveying cases filed after *Johnson*, the court concluded the immunity inapplicable because "[t]he adoption process is not a commercial transaction, such as leasing and purchasing property or contracting for a pension.  The immunity provided governmental entities and public employees by sections 818.8 and 822.2 does not shield the [c]ounty from liability for misrepresentation and deceit in this social service area, designed to serve the interests of society by acting in the best interests of the child. . . . Although [the] plaintiffs suffer[ed] a financial loss in the sense that they have incurred, and will continue to incur, substantial medical expenses, their loss did not result from a commercial transaction with the [c]ounty nor from the [c]ounty's interference with a commercial transaction."  (*Michael J.*, at p. 872.)

Conversely, in *Thomas*, a college soccer player sued the state alleging the soccer coach's "misrepresentations caused her to lose the value of the scholarship she had been offered by the University of Colorado and incur the cost of attending [the University of California, Berkeley] and harmed her ability to play soccer at a professional level." (*Thomas v. Regents of University of California*, *supra*, 97 Cal.App.5th at pp. 600, 641.) Division Two of the Court of Appeal, First Appellate District found, "[T]hese are financial interests sufficient to make the claims subject to immunity under [section]

8

822.2." (*Ibid*.)  In *Jopson*, we concluded the immunity applied for an air quality management district that erred in banking and issuing the plaintiff pollution credits because the misrepresentation interfered with the plaintiff's "financial interest, causing, as it did, a large loss in the sales price" of the relevant property.  (*Jopson v. Feather River Air Quality Management Dist.*, *supra*, 108 Cal.App.4th at p. 502; *id*. at p. 493.)  And in *County of San Bernardino*, Division Two of the Court of Appeal, Fourth Appellate District found a county immune when a county registrar of voters misstated the number of signatures required for a petition, resulting in the plaintiff "needlessly spending more than $250,000 to collect the unnecessary signatures."  (*County of San Bernardino v. Superior Court* (2022) 77 Cal.App.5th 1100, 1105; *id*. at p. 1115.)

II

*The Trial Court Abused Its Discretion In Denying Leave To Amend*

We first address and reject defendants' argument that plaintiffs forfeited challenging the misrepresentation immunities by failing to raise it with the trial court. Plaintiffs did not present a challenge to the misrepresentation immunities to the trial court, and even conceded the immunities valid.  But we conclude this issue is still properly before us.  As this court has concluded, "When a demurrer is sustained without leave to amend the petitioner may advance on appeal a new legal theory why the allegations of the petition state a cause of action.  [Citation.]  This is so because of the general rule that ' "a litigant may raise for the first time on appeal a pure question of law [that] is presented by undisputed facts." '  [Citation.]  The same rule applies to a motion for judgment on the pleadings. . . .  [Citation.]  Accordingly, an appellant challenging the granting of a motion for judgment on the pleadings 'may change his or her theory on appeal [citation], and an appellate court can affirm or reverse the ruling on new grounds. [Citations.]  After all, we review the validity of the ruling and not the reasons given.' "  (*Dudley v. Department of Transportation*, *supra*, 90 Cal.App.4th at pp. 259-260.)  We

9

consequently may, and do, address plaintiffs' legal argument challenging the application of the misrepresentation immunities.

The amended complaint is not entirely clear on whom plaintiffs are alleging did what and how. The amended complaint is against all defendants, but the individual causes of action are specifically listed as against only the County. And some individual defendants are wholly absent from the allegations. This is important because the immunity statutes are different for public entities than they are for public employees. We also agree with defendants that the precise harm alleged is not sufficiently pled, especially for a fraud cause of action. (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 433 ["Fraud must be ple[d] with specificity rather than with ' "general and conclusory" ' allegations"].) The allegations of harm are vague and uncertain without explanation of how the erroneous notations in child protective services records have resulted in plaintiffs' "emotional distress, defamation of character, legal expenses, and general fear" and violations to them, their "small business, and civil rights for [their] family." And the type of harm alleged is critical in the analysis for determining what interest is at issue and whether the misrepresentation immunities apply. We therefore cannot conclude that plaintiffs have or will necessarily be able to plead sufficient facts to avoid defendants' immunity from misrepresentation liability.

But the above-summarized cases establish plaintiffs' case *could* fall outside the scope of the misrepresentation immunities under sections 818.8 and 822.2. The amended complaint alleged defendants maintained erroneous records linking plaintiffs with unrelated third parties sharing the same names and who have sustained child protective services allegations. This is unlike *Thomas*, *Jopson*, and *County of San Bernardino* because plaintiffs are not alleging they had any commercial transaction such that defendants' actions required plaintiffs to overspend on a transaction or eschew commercial opportunities or sell something for lesser value. The harm, instead, is alleged as to plaintiffs individually. For example, their "security" and "safety" with "stalking"

10

and "hacking." This type of harm constitutes harm to the individual as opposed to the individual's financial interests and is consistent with the holding in *Thomas* distinguishing physical harm from financial interests. (*Thomas v. Regents of University of California*, *supra*, 97 Cal.App.5th at p. 640.) Further, harm related to the safety and security of the individual is not a marker of the commercial interests articulated in *Thomas*, *Jopson*, and *County of San Bernardino*. Conversely, most of plaintiffs' claims are more akin to the misrepresentations in *Johnson* and *Michael J.*, where the injured party was not conducting any commerce. Though plaintiffs' interests here do not involve adoption, they may involve the type of records and disclosures described by the *Michael J.* court as outside the commercial context and within the unprotected "social service area." (*Michael J.*, *supra*, 201 Cal.App.3d 859 at p. 872.)

Defendants contend plaintiffs' allegation of "defamation of character and legal expenses . . . appear to encompass financial or commercial concerns." But as found in *Michael J.*, suffering financial loss does not automatically mean the nature of the interest is financial. (*Michael J.*, *supra*, 201 Cal.App.3d at p. 872 ["Although [the] appellants suffer[ed] a financial loss . . . their loss did not result from a commercial transaction with the [c]ounty nor from the [c]ounty's interference with a commercial transaction"].) What matters is the nature of the transaction. Here, it is possible it is not of a financial nature, and plaintiffs are entitled to an opportunity to clarify as such.

We therefore conclude there is a reasonable possibility plaintiffs can state a cause of action the misrepresentation immunities would not bar. This means the trial court necessarily abused its discretion in denying plaintiffs leave to amend to plead sufficient facts that establish their claims are not misrepresentations immunized by sections 818.8 and 822.2. We do not conclude, however, that plaintiffs have or will necessarily be able to plead sufficient facts to avoid defendants' immunity from misrepresentation liability. Given the ambiguities in the amended complaint discussed above, especially the harm alleged, plaintiffs must further amend their complaint to address these issues.

III

*Plaintiffs Must Also Amend To State Claims For Fraud And Negligence*

Defendants also assert plaintiffs' amended complaint fails to state sufficient facts for the alleged causes of action even if the misrepresentation immunities do not apply. We agree.

" 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) " 'The elements of a cause of action for negligence are duty, breach, causation, and damages.' " (*Johnson v. Prasad* (2014) 224 Cal.App.4th 74, 78.)

For the fraud claim, defendants argue plaintiffs do not allege defendants "acted with an intent to induce [p]laintiffs' reliance," there was "no reliance by [p]laintiffs," and "[p]laintiffs do not plead specific facts demonstrating they were actually damaged by the alleged misrepresentation." For the negligence claim, defendants assert plaintiffs failed to allege a duty defendants owed them and plaintiffs "did not plead facts demonstrating a breach of any such duty, or how any potential breach of that duty actually injured them." We agree with defendants' arguments here and find the amended complaint pleads insufficient facts for the fraud and negligence causes of action for the above reasons. But defendants do not argue there is no reasonable possibility plaintiffs can amend to state a good cause of action to remedy these defects. This is the critical analysis at this initial pleading stage.

Plaintiffs have not had an opportunity to amend their complaint to address these issues because the trial court granted the motion and denied leave to amend on the misrepresentation immunities. And plaintiffs make several arguments in their briefs on how the above issues can be addressed, including that the County owes them a duty of care and plaintiffs justifiably relied on defendants' misrepresentations both before and

12

after complaining to the County about the erroneous information contained in the child protective services records. It is entirely possible plaintiffs still cannot sufficiently plead a claim for fraud, negligence, or any other cause of action. But they have not been given the opportunity to address these issues, so we shall give them this opportunity here. (*City of Stockton v. Superior Court*, *supra*, 42 Cal.4th at p. 747 ["leave to amend is liberally allowed as a matter of fairness"].)

In short, we conclude the trial court abused its discretion by denying plaintiffs leave to amend on the misrepresentation immunities because the facts as currently alleged in the amended complaint do not foreclose the possibility the misrepresentation immunities may not apply. (*Dudley v. Department of Transportation*, *supra*, 90 Cal.App.4th at p. 260 ["it is an abuse of discretion to grant a motion for judgment on the pleadings without leave to amend ' "if there is any reasonable possibility that the plaintiff can state a good cause of action" ' "].) Nor does the amended complaint foreclose the possibility plaintiffs can plead facts for valid fraud and negligence claims. Because they have not been given an opportunity to amend on these issues, we reverse and remand to provide plaintiffs such an opportunity.

## DISPOSITION

The judgment of dismissal is reversed.  The matter is remanded with instructions to vacate the order granting the motion for judgment on the pleadings without leave to amend and to enter a new order granting the motion with leave to amend.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

/s/_____
ROBIE, J.

We concur:

/s/_____
EARL, P. J.

/s/_____
FEINBERG, J.

14